649 So.2d 746 (1994)
Joseph CHEVALIER, et ux., Plaintiffs-Appellants,
v.
Gregorie REAM, Louisiana Insurance Guaranty Association, et al., Defendant-Appellee.
No. 94-741.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Rehearing Denied March 1, 1995.
John Taylor Bennett, Marksville, Edward Kaplan, Alexandria, for Joseph Chevalier, et ux.
Andrew E. Schaffer, Alexandria, for Gregorie Ream, et al.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
PETERS, Judge.
Joseph Chevalier and his wife, Gislea Chevalier, appeal a summary judgment rendered in favor of Louisiana Insurance Guaranty Association (LIGA) denying uninsured motorist coverage under a policy issued by an insolvent insurer, Pelican State Mutual Insurance Company (Pelican State). The insured under the policy was Larry Grayson, doing business as Larry Grayson & Son Trucking, the employer of Joseph Chevalier. The Chevaliers and LIGA filed a joint motion for summary judgment in the trial court for a determination of the issue of uninsured motorist coverage only. It is from an adverse ruling on this motion that the Chevaliers have perfected this appeal.

FACTS
The facts considered by the trial court on the motion for summary judgment are not in dispute. On October 3, 1990, Joseph Chevalier was employed as a dump truck driver by Larry Grayson and had just completed dumping a load of dirt at a construction site in Rapides Parish, Louisiana, when the load from another truck shifted causing that truck to tip on its side. When this occurred, Chevalier was pinned to the tailgate and bed of his truck and received severe personal injuries.
*747 Although numerous other parties have been a part of this litigation in various capacities, claims associated with those parties have been resolved either by judgment or settlement. The remaining issue before the trial court involved the interpretation of an insurance policy issued by Pelican State Mutual Insurance Company to Larry Grayson. Pelican State was declared insolvent during the pendency of the proceedings and Louisiana Insurance Guaranty Association was substituted as the defendant pursuant to Louisiana Revised Statutes 22:1382.
Grayson had purchased insurance from Pelican State on a year to year basis and had a policy of liability insurance in force and effect on October 3, 1990, said policy having a term from December 17, 1989, to December 17, 1990. When Grayson acquired coverage on December 17, 1989, he rejected uninsured motorist coverage in writing. The vehicle being operated by Joseph Chevalier on October 3, 1990, had been purchased by Grayson after December 17, 1989, and added to the policy as an insured vehicle. When it was added, Larry Grayson did not sign a waiver of uninsured motorist coverage relative to that particular vehicle. The Chevaliers contend that the addition of the new vehicle to the policy required a new uninsured motorist coverage rejection. Without a new rejection, the Chevaliers contend the policy must be interpreted to reflect uninsured motorist coverage.
LIGA denies that the Pelican State policy insuring Grayson provides for uninsured motorist coverage. This denial is based on the specific language of the written rejection of coverage which reads in part as follows:
"I understand that the choice indicated shall also apply to all future renewal or replacement policies and to any auto added to this policy, its renewal or replacement policy, until I request a change in writing. I also understand that this form is a part of my policy." (emphasis added).
Since the facts material to our inquiry on appeal are indisputable as evidenced by the parties' stipulation, the only issue to be considered is whether LIGA is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.

LEGAL ANALYSIS
The issue in this case is whether or not an insured under a commercial automobile liability policy is required to execute a new rejection of uninsured motorist coverage when he adds a new vehicle to his existing policy.
Our uninsured motorist statute provides in part:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Subsection may exclude coverage for punitive or exemplary damages by the terms of the policy or contract.
La.R.S. 22:1406(D)(1)(a)(i).
There is a strong public policy which underlies the language of our uninsured motorist *748 statute. As the Supreme Court explained in Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987):
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured.
Id. at 1130 (citations omitted).
To effectuate its goal of protecting innocent victims from uninsured or underinsured motorists, uninsured motorist coverage is deemed to exist in all automobile policies in an amount equal to the liability limit unless the insured expressly rejects the uninsured motorist coverage. Donaghey v. Cumis Insurance Society, 600 So.2d 829 (La.App. 3d Cir.1992). However, Louisiana Revised Statutes 22:1406 also provides that a prior rejection of uninsured motorist coverage remains valid if a policy can be classified as a renewal, reinstatement, or substitute policy. This court has consistently held that the addition of a car to an individual automobile policy, without changes in bodily insurance limits, amounts to an increase in that policy's coverage and that constitutes the issuance of a new policy requiring a separate rejection. Donaghey v. Cumis Insurance Society, supra; Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d 1250 (La.App. 3d Cir.1989); Troha v. State Farm Insurance Company, 606 So.2d 89 (La.App. 3d Cir.1992); and Thibodeaux v. Champion Insurance Company, 614 So.2d 232 (La.App. 3d Cir.1993).
However, this court recently drew a distinction between individual automobile liability policies and business automobile fleet policies. In Latiolais v. Liberty Mutual Insurance Co., 93-579 (La.App. 3d Cir. 5/4/94); 640 So.2d 448, writ denied, 94-1420 (La. 9/23/94); 642 So.2d 1289, this court was faced with a plaintiff who was injured in the course and scope of his employment while driving a truck owned by his employer, Emile Barras, Inc. The employer had purchased a business automobile fleet policy with Liberty Mutual Insurance Company in which it had rejected uninsured motorist coverage. The truck involved in the accident was covered under this policy. Subsequent to the effective date of the policy, the employer purchased five new vehicles which were added to the policy. No new rejection of uninsured motorist coverage took place.
After the plaintiff was injured in the automobile accident, he sued Liberty Mutual for uninsured motorist coverage. Liberty Mutual denied the coverage arguing that the employer had executed a rejection of uninsured motorist coverage. Relying on Donaghey, supra, the plaintiff argued that each time his employer added a vehicle to the policy, a new policy was created requiring a new rejection of uninsured motorist coverage.
This court rejected that argument and chose to follow the rationale of the Fourth Circuit Court of Appeal in Bordelon v. Jackson, 499 So.2d 392 (La.App. 4th Cir.1986), writ not considered, 500 So.2d 412 (La.1987) which had previously held that a new policy did not result each time a vehicle was added to or deleted from a fleet policy. This court concluded:
Although cars were continually added to the fleet policy, there was uninterrupted coverage. Fleet policies envision such additions; and, the insured is not required to execute separate rejection when each new vehicle is added to these commercial policies. This requirement would be unduly burdensome and impractical. Neither public policy nor strict interpretation of La.R.S. 22:1406(D)(1)(a)(i) require us to insist that such rejections must be executed each time a vehicle is added to an existing fleet policy.

Latiolais, 640 So.2d at 450.
In this case, the policy at issue is similar to the business fleet policy in Latiolais in that in both cases the addition and deletion of vehicles was contemplated by the parties. Grayson testified that it was his practice to repair or substitute vehicles regularly and that he always intended for them to have identical coverage, which did not include uninsured motorist coverage. Specifically, he testified that he did not intend for the vehicle involved in this accident to have uninsured motorist coverage, and that he had never had uninsured motorist coverage with Pelican State as he had always rejected that *749 coverage in an attempt to save money on premiums.
Considering the factual situation in this case and this court's ruling in Latiolais v. Liberty Mutual Insurance Co., supra, we conclude that the trial court was correct in finding that LIGA was entitled to judgment as a matter of law. All costs of this appeal are taxed to the plaintiffs, Joseph and Gislea Chevalier.
AFFIRMED.
THIBODEAUX, J., concurs and assigns reasons.
THIBODEAUX, Judge, concurring.
I agree with the result reached by the majority but would limit the application of this case to the specific instance where a commercial automobile liability policy contemplates the addition and deletion of vehicles. Some commercial automobile liability policies do not contemplate regular additions and deletions. Under those circumstances, the principles governing the application of uninsured motorists in individual liability policies would apply. See, Thibodeaux v. Champion Insurance Company, 614 So.2d 232 (La.App. 3d Cir.1993); Donaghey v. Cumis Insurance Society, 600 So.2d 829 (La. App. 3d Cir.1992); and, Troha v. State Farm Insurance Company, 606 So.2d 89 (La.App. 3d Cir.1992).