667 So.2d 559 (1995)
Rose PERKINS, et al., Plaintiff-Appellee,
v.
GUARANTY NATIONAL INSURANCE COMPANY, Defendant-Appellant.
No. 95-229.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1995.
Rehearing Denied February 26, 1996.
*561 Christopher J. Roy Sr., Alexandria, Edward Matthew Mouser, Kinder, Chris J. Roy Jr., Alexandria, for Rose Perkins.
James Eugene Williams, Lake Charles, for Guaranty National Insurance Co.
Samuel Newman Poole Jr., Alexandria, for Fidelity & Casualty Co. of New York.
Before COOKS, WOODARD and AMY, JJ.
COOKS, Judge.
This appeal arises from the trial judge's ruling that a commercial automobile insurance policy holder's rejection of uninsured motorist coverage was not valid. The trial judge also increased the damages awarded to plaintiffs by the jury and granted the insurer's motion for a new trial on the issue of penalties and attorney's fees. Both rulings have been assigned as error on appeal. For the following reasons, we affirm.

FACTS
Edward G. Perkins was killed on December 29, 1990 when another vehicle driven by *562 Tim Landry in the opposite lane of traffic crossed the centerline of the road and struck his automobile. Edward's son, James Perkins, was traveling with him and also was injured. Although insured, Landry's coverage was not sufficient to cover the damages suffered. Edward's survivors filed this wrongful death suit for uninsured motorist benefits.
Edward Perkins was working for M.J. Hollins Construction as a foreman and was driving his wife's auto when the accident occurred. Matthew J. Hollins, the owner of M.J. Hollins Construction, obtained a commercial auto policy issued by Guaranty National Insurance Company (Guaranty). Under the terms of the policy, nonowned vehicles were covered by the policy under certain circumstances:
NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent, or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.
Plaintiffs filed suit to recover damages claiming Edward was an insured under Hollins' policy. They asserted the damages were covered by Hollins' uninsured motorist coverage. Guaranty argued Hollins validly rejected uninsured motorist coverage. The commercial auto policy Guaranty issued to Hollins was effective October 19, 1990 to October 19, 1991. Hollins rejected uninsured motorist coverage on October 15, 1990. Plaintiffs do not contest the validity of this rejection.
However, when Hollins added another vehicle to his commercial policy, another document rejecting uninsured motorist coverage was executed on December 5, 1990. They assert the December 5, 1990 rejection is not valid because Hollins' wife signed the rejection without Hollins' authority. Plaintiffs contend the addition of a new vehicle to Hollins' policy required the execution of a valid rejection. Absent such, plaintiffs urge, Hollins' policy provides uninsured motorist coverage for the damages arising out of Perkins' accident.
The trial judge agreed. He reasoned the December 5, 1990 rejection was not valid because it was not in proper form. The document was not completed as required by Guaranty, i.e., it did not contain the insured's name and the policy number. Thus, the trial judge rendered a directed verdict after finding Hollins' policy provided uninsured motorist coverage. The remaining issues were submitted to the jury, which found in favor of the plaintiffs. The trial judge increased the jury's award after plaintiffs filed a motion for a new trial and/or judgment notwithstanding the verdict claiming the jury's award was abusively low. In response to Guaranty's motion for a new trial, the trial judge set aside the jury's award of penalties and attorney's fees. Guaranty appeals the trial court's directed verdict and increase of the damage award. Plaintiffs answered requesting reinstatement of penalties and attorney's fees. For the following reasons, we affirm.

DISCUSSION

Uninsured Motorist
Uninsured motorist coverage exists in all automobile policies in an amount equal to the liability limit unless the insured expressly rejects the uninsured motorist coverage. Donaghey v. Cumis Ins. Soc., 600 So.2d 829 (La.App. 3 Cir.1992). Moreover, in the case of a renewal, reinstatement or substitution of a policy, a prior rejection of uninsured motorist coverage is still valid. La. R.S. 22:1406(D)(1)(a)(i).
In the past, we have been called to answer whether the insured under a commercial automobile liability policy is required to execute a new rejection of uninsured motorist coverage when a new vehicle is added to an existing policy. We examined this question in Chevalier v. Ream, 94-741 (La. App. 3 Cir. 12/7/94); 649 So.2d 746 by first reviewing the distinction between individual automobile liability policies and commercial automobile fleet policies. In Donaghey, 600 So.2d 829, we concluded each time a vehicle is added to an individual insurance policy, a new rejection of uninsured motorist coverage must be executed. In that case, we found *563 the addition of each vehicle increased the policy's coverage, and therefore, the policy could not be considered a renewal. In Latiolais v. Liberty Mut. Ins. Co., 93-579 (La.App. 3 Cir. 5/4/94); 640 So.2d 448, writ denied, 94-1420 (La. 9/23/94); 642 So.2d 1289, however, we concluded a new rejection of uninsured motorist coverage is not required each time a vehicle is added to an existing fleet policy. Fleet policies contemplate the addition and deletion of vehicles and coverage is uninterrupted although cars are continually added.
In Chevalier, 649 So.2d 746, the insured added a vehicle to an existing policy which reflected previous rejection of uninsured motorist coverage. No new rejection was executed when the vehicle was added. This court concluded the commercial policy was similar to the fleet policy in Latiolais, 640 So.2d 448. The insured testified he substituted vehicles regularly and he always intended for them to have the same coverage, which excluded uninsured motorist coverage. He did not intend to have uninsured motorist coverage on the vehicle involved in the accident, and he always rejected uninsured motorist coverage to lower his insurance premiums. Moreover, the commercial insurance policy at issue in Chevalier contained the following provision:
"I understand that the choice indicated shall also apply to all future renewal or replacement policies and to any auto added to this policy, its renewal or replacement policy, until I request a change in writing. I also understand that this form is a part of my policy."
Chevalier, 649 So.2d at 747 (emphasis added).
In both Latiolais and Chevalier, the parties contemplated the regular addition and deletion of vehicles.
Turning to the facts before us, Hollins did not substitute vehicles regularly. Moreover, Hollins' commercial policy does not contain a provision stating the decision to accept or reject uninsured motorist coverage would apply to any vehicle added to the policy unless a change was requested in writing. Under these circumstances, the addition of a vehicle to a commercial insurance policy, without changes in bodily insurance limits, is tantamount to issuing a new policy. Hollins' commercial policy is like an individual insurance policy, which requires a new rejection of uninsured motorist coverage.
The question remains whether the December 5, 1990 rejection of uninsured motorist coverage is valid. The December 5, 1990 rejection form was signed, but Hollins' name and the insurance policy number did not appear on the form. Evelyn Shearer, an employee of Guaranty, testified the rejection form must be completely filled out. Guaranty later accepted the rejection because the pertinent information, subsequently, was added to the document before it was forwarded to Guaranty. If the insured's name and policy number were omitted from the form, it would be returned to the agency that sold the policy. An employee of the agency that sold Hollins the insurance policy, Kelly Goins, testified that it is improper to have an insured sign a rejection form without his name and policy number written on it.
There is strong public policy in favor of uninsured motorist coverage. Roger v. Estate of Moulton, 513 So.2d 1126 (La. 1987). The Court in Roger stated "the liberal construction given the uninsured motorist statute requires the statutory exceptions to the coverage be interpreted strictly." Id. at 1130. A rejection must be clear, unambiguous and in proper form. Holbrook v. Holliday, 93-1639 (La.App. 3 Cir. 6/1/94); 640 So.2d 804, writ denied, 94-1735 (La. 10/7/94); 644 So.2d 642; Dibos v. Bill Watson Ford, Inc., 622 So.2d 677 (La.App. 4 Cir.1993). Ms. Shearer's and Mr. Goins' testimony indicate the rejection was not in proper form. Therefore, the December 5, 1990 rejection of uninsured motorist coverage was not valid.
Next, Guaranty argues Edward's accident is not covered because the policy covers nonowned autos "only while used in [the insured's] business or personal affairs." It contends the vehicle Edward was driving is not a covered auto because he was not acting in the course and scope of his employment at the time of the accident.
The jurisprudence has interpreted the nonowned autos provision as requiring that the accident occur while the nonowned auto is being used in the course and scope of the insured's business or personal affairs. Gore *564 v. State Farm Mut. Ins. Co., 26-417, 26-418 (La.App. 2 Cir. 1/25/95); 649 So.2d 162, writ denied, 95-0503 (La. 4/21/95); 653 So.2d 555; Whetstone v. Dixon, 616 So.2d 764 (La.App. 1 Cir.), writ denied, 623 So.2d 1333 (La.1993); Price v. Colony Ins. Co., 520 So.2d 964 (La. App. 3 Cir.), writ denied, 522 So.2d 561 (La.1987); Dean v. State Farm Mut. Auto. Ins. Co., 518 So.2d 1115 (La.App. 4 Cir.1987), writ denied, 522 So.2d 1096 (La.1988).
Edward was a foreman for Hollins, who was in the business of planting trees for various businesses. Edward carried the tools that were needed in his vehicle and recruited people to work for Hollins. Veronica Renee Strother and James Perkins testified the work crew did not know where they would be working on any day until Edward informed them of the location of their job site. Veronica and James also stated some workers would meet at a caution light at Union Hill and travel to Ray's Grocery. They would pick up more workers at Ray's Grocery, and Edward would tell them where they would be working that day. The accident occurred while Edward and James were traveling to Ray's Grocery. Edward's trips to the designated meeting places were integrally related to executing Hollins' daily business affairs because he had to meet the workers and direct them to the job site. If Edward did not meet the workers, the employees would not know where they were going to plant trees. Consequently, Hollins would not be able to meet his contractual obligations. Therefore, we conclude Edward was acting in the course and scope of his employment when the accident occurred.

JNOV
Guaranty argues the trial judge erred in granting plaintiffs' motion for a judgment notwithstanding the verdict and increasing the jury's damage award as follows:

Plaintiff Jury's Award Final Award
Loss earnings, to date $21,000 affirmed
Loss earnings, future $75,000 affirmed
Funeral expenses -0- $ 3,704.16
Rose Perkins (spouse) $40,000 $125,000
Kayla Marie Perkins
 (minor) $30,000 $ 70,000
Monica Lynn Perkins
 (minor) $30,000 $ 70,000
Christine Perkins Reeves
 (major) $ 2,500 $ 50,000
Melissa Perkins Reeves
 (major) $ 2,500 $ 50,000
James Perkins (major) $ 5,000 $ 75,000

Guaranty claims contrary to the major children's assertion that they were close to their father and missed him very much since his death, the record shows they left their father's home between the ages of 14 and 16. They were independent at early ages and lived without the constant guidance and attention, as well as, the emotional and financial support they might have enjoyed if they had come to maturity with their father.
La.Code Civ.P. art. 1811 permits a judgment notwithstanding the verdict, but it does not specify the grounds on which a trial judge may grant it. The Louisiana Supreme Court reiterated the criteria we should consider in determining whether a JNOV is proper in Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991). A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson, 583 So.2d at 833.
If the trial judge determines that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it should render a de novo award based on its independent assessment of damages. Anderson, 583 So.2d at 834.
As instructed on appeal, in assessing the propriety of the trial judge's decision to *565 grant a JNOV, we must first inquire whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer is no, then it is error for the trial judge to grant the motion and the jury's verdict should be reinstated. Daigle v. U.S. Fidelity & Guar. Ins. Co., 94-0304 (La.App. 1 Cir. 5/5/95); 655 So.2d 431. If the trial court correctly granted the JNOV, our review of the trial court's damage awards is limited to determining whether they are manifestly erroneous. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Guaranty makes much ado over the fact that the minor children left their father's home while they were teenagers. However, the trial judge noted in his reasons for judgment that Edward's adult children, Christine, Melissa, and James, had a strong relationship with their father because he raised them after he and his first wife divorced. After Edward married his second wife, the children remained with him and their stepmother until they were teenagers. They had the benefit of their father's love and guidance through those years. Under these circumstances, the trial judge concluded, reasonable men could not arrive at a verdict of $2,500 for their loss. Moreover, James had a closer relationship with his father than Christine and Melissa because they hunted, fished and worked together. Also, James was traveling with Edward when the accident occurred.
The trial judge also concluded that reasonable minds could not differ that the awards to Rose Perkins and the two minor children were too low. The jury awarded Rose Perkins $40,000 and the minor children each $30,000. Rose testified she and Edward had a good, stable marriage and shared their home with their two children. Edward helped maintain the house and yard. They enjoyed visiting and dancing. The trial judge found the two minor children, Kayla and Monica, sustained a greater loss than the major children. In addition to the mental anguish of losing a father, they lost his guidance, comfort and society as well as the love and affection.
On this record, we cannot say the trial judge erred in concluding reasonable minds could not differ that the jury's awards were abusively low. Further, the record supports the de novo awards rendered by him.

Penalties and Attorney's Fees
Plaintiffs appeal the trial judge grant of Guaranty's motion for a new trial on the issue of penalties and attorney's fees. They claim ample evidence exists to support the jury's finding that Guaranty's conduct was arbitrary and capricious.
Articulating the standard for granting a new trial on the grounds enunciated in La. Code Civ.P. art. 1973, the Louisiana Supreme Court in Anthony v. Davis Lumber, 629 So.2d 329, 331 (La.1993) stated:
"A proper application of this article necessitates an examination of the facts and circumstances of the individual case. When the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered. We have recognized that the court has much discretion regarding this determination. However, this court will not hesitate to set aside the ruling of the trial judge in a case of manifest abuse."
La.R.S. 22:658, which provides for penalties and attorney's fees when an insurer arbitrarily, capriciously, or without probable cause fails to tender the amount due after satisfactory proof of loss is penal in nature and must be strictly construed. Shrader v. Life General Sec. Ins. Co., 588 So.2d 1309, writ denied, 592 So.2d 1317 (La. 1991). Moreover, the penalty provisions of this statute should not apply when a reasonable defense has been presented in good faith by an insurer. Henton v. Walker & Wells Contractors, 25-821 (La.App. 2 Cir. 5/4/94); 637 So.2d 672, writ denied, 94-1491 (La. 9/23/94); 642 So.2d 1295.
The trial judge stated in his reasons for judgment that Hollins had historically rejected uninsured motorist coverage. Guaranty's file contained what appeared to be a properly executed and dated rejection of uninsured motorist coverage. Guaranty was *566 entitled to rely upon Hollins' deposition testimony that he signed the rejection. The trial judge also noted a valid issue existed regarding whether Edward's vehicle was insured by Hollins' commercial automobile insurance policy. These facts, the trial judge concluded, presented valid defenses to the plaintiffs' claim. On this record, we cannot say the trial judge abused his discretion.

CONCLUSION
The trial court properly found Edward's vehicle is an insured auto under Hollins' commercial automobile insurance policy. Moreover, the trial court properly granted plaintiffs' JNOV and Guaranty's motion for a new trial. Accordingly, the trial court's judgment is affirmed. All costs on appeal are assessed against defendant-appellant.
AFFIRMED.
AMY, J., concurs in part and dissents in part.
AMY, Judge, concurring in part and dissenting in part.
I agree with the majority that Hollins' commercial policy provides uninsured motorists coverage in the case before us and that the trial court did not abuse its discretion in granting Guaranty a new trial on the issue of attorney's fees and statutory penalties. Nevertheless, I respectfully disagree with the majority that it was within the trial court's discretion to have granted a judgment notwithstanding the verdict and to have increased the jury's damage award. I do not conclude that the evidence points so strongly and overwhelmingly in favor of the plaintiffs that the jury's verdict was unreasonably low. Accordingly, I believe that the jury verdict was within the wide discretion afforded the trier of fact and should be reinstated.