688 So.2d 1122 (1996)
Huey L. DEVILLE, Sr., et ux., Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
No. 96-161.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
*1123 Charles K. Charrier, Alexandria, for Huey L. Deville Sr., et ux.
William H. deLaunay, Jr., Eugene Joseph Sues, Alexandria, for Allstate Ins. Co.
Nicholas Gachassin, Jr., James R. Shelton, Lafayette, for St. Paul Fire and Marine Ins. Co.
Jeffrey Allan Riggs, Alexandria, for Luhr Brothers.
Leonard Fuhrer, Alexandria, for Larry Scott Kight, et al.
David Edwin Lafargue, Marksville, for State of Louisiana.
Before THIBODEAUX, COOKS and AMY, JJ.
COOKS, Judge.
Plaintiffs appeal the trial court's order granting a motion for summary judgment finding the uninsured motorist insurer paid the maximum amount recoverable pursuant to the terms of the policy it issued. For the following reasons, we affirm.

FACTS
On December 20, 1993, Huey Deville, driving a Chevrolet truck on Highway 107 in Avoyelles Parish, was struck by a car operated by Thelma Kight. Mrs. Kight turned left into Deville's lane of travel causing the accident, which tragically killed Mrs. Kight and injured Huey Deville.
Huey and Margaret Deville instituted suit against: (1) Allstate Insurance Company as the insurer of Thelma Kight and as the Deville's UM insurer; (2) the State of Louisiana (through the Department of Transportation and Development) for allegedly failing to maintain the intersection where the accident occurred and warn motorist of certain defective conditions which allegedly presented unreasonable risks of harm, (3) the Succession and/or Estate of Thelma Kight, as representative of the alleged tortfeasor; and, (4) St. Paul Fire & Marine Insurance Company as the UM carrier of Luhr Brothers, Inc. (Deville's employer and owner of the truck he was driving).
Luhr Brothers secured a policy of automobile liability insurance with St. Paul for the period of April 1, 1993 through March 31, *1124 1994. However, on August 13, 1993, Michael P. Habel, Vice-President of Luhr Brothers, signed a document entitled "Uninsured Motorist Protection or Rejection Form/Louisiana" on behalf of Luhr Brothers selecting UM coverage of $25,000 per accident.
On or about May 11, 1995, St. Paul Fire & Marine Insurance Company made an unconditional tender of $25,000 plus interest, for a total of $26,387.34, to the Devilles. Subsequent to the tender St. Paul filed a Motion for Summary Judgment seeking dismissal of the claims against it asserting the $25,000 UM limit was in effect at the time of the accident on December 20, 1993. After a hearing, the trial court agreed with St. Paul and granted its summary judgment motion. Plaintiffs have appealed this ruling.

ANALYSIS
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Holbrook v. Holliday, 93-1639 (La. App. 3 Cir. 6/1/94); 640 So.2d 804, writ denied, 94-1735 (La. 10/7/94); 644 So.2d 642. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.
The intent of UM legislation is to promote full recovery for innocent automobile accident victims by making uninsured motorist coverage available for their benefit. La.R.S.22:1406; Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La. 1982). Thus, the statutory exceptions to the coverage requirement are interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to bodily injury limits or selected lower limits. Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991); Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987).
A valid rejection requires that the insured or his authorized representative expressly state in a document that UM coverage is rejected or selected in lower limits. See Tugwell, 609 So.2d 195 and Roger, 513 So.2d 1126. The form used by the insurance company must give the insured the opportunity to make a "meaningful selection" from the following options: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. Tugwell, 609 So.2d at 195. Our review of the record reveals the form used by St. Paul Fire & Marine complied with these statutory requirements.
No further issues of material fact exist. The dates are not in dispute. The selection of lower UM limits occurred after the effective date of the policy, and before the accident in question. Michael P. Habel, Vice-President of Luhr Brothers, who signed the selection of lower limits had authority to sign for Luhr Brothers. The only issue before us is a question of law, i.e., whether a selection of lower UM limits, after the effective date of the policy, is legally effective.
Plaintiffs citing Futch v. Commercial Union Ins. Co., 625 So.2d 1019 (La.1993) argued selection of lower limits must be made at the time the policy is issued. However, the precise issue before us was not before the court in Futch. Therefore, we decline to follow dicta in Futch, particularly considering sound jurisprudence exists to the contrary.
In Washington v. Savoie, 92-2957 (La. 4/11/94); 634 So.2d 1176, the insurer issued a comprehensive automobile insurance policy to the Orleans Parish School Board, effective November 15, 1984. However, the School Board did not execute the insurer's blank endorsement to reject or select lower UM limits prior to issuance of the policy. Nearly six months later, in response to the insurer's request to submit its UM selections, the School Board executed two endorsements: (1) Endorsement No. 16, which selected lower UM limits of $5,000 per person and $10,000 per accident for private passenger vehicles and specified an effective *1125 date of November 15, 1984, the date of the policy's original issuance, and (2) Endorsement No. 18, which rejected UM coverage as to all other vehicles and specified an effective date of November 15, 1985. The effective date of endorsement No. 18 was allegedly a typographical error which was corrected by the insurer, but not until after vehicular accidents occurred. Both sides filed motions for summary judgment on the issue of UM coverage. The trial court granted summary judgment in the plaintiffs' favor finding the rejection was not valid as to these plaintiffs because the effective date on the endorsement rejecting coverage was November 15, 1985 and the policy could not be amended to correct a typographical error after a cause of action had arisen in favor of a "third party." The court of appeal reversed, concluding that the stated effective date of November 15, 1985 on Endorsement No. 18 was merely a typographical error and that the parties intended to reject UM coverage from November 15, 1984. The Supreme Court reversed the judgment of the court of appeal and reinstated the trial court's grant of the summary judgment motion. The Louisiana Supreme Court reasoned:
[p]ermitting corrections of alleged typographical errors in UM coverage rejections to reflect the parties' intent, after the occurrence of injuries to persons insured under the policy, would be inconsistent with the strict requirements that this court previously has imposed upon rejection of UM coverage, as well as the purpose of UM coverage to provide for protection of persons insured under the policy. Washington, 634 So.2d at 1180.
Nevertheless, the Supreme Court stated:
The initial rejection of UM coverage contained in Endorsement No. 18 fully complied with the statutory requirements of Section 22:1406 D(1)(a) and the jurisprudential requirements set forth in Roger. The endorsement was in writing and was properly signed by the insured. The waiver was contained in a single writing and clearly provided that the insured rejected UM coverage as to the First Horizon policy. In addition, the rejections specified the effective date of the waiver of UM coverage, that is, November 15, 1985. The rejection was therefore valid and enforceable as written. Id. at 1179.
The trial court correctly interpreted Washington as holding valid rejection of or reduction in UM coverage may occur after issuance of an insurance policy. Although plaintiff's counsel at oral argument suggested the word "initially" and the phrase "when issued or delivered" used in La.R.S. 22:1406 D(1)(a)(ii) statutorily required an insured to reject or select a lower UM limit contemporaneously with the issuance of a policy, we are not convinced the referenced language prevents an insured from subsequently making such election in writing, effective on a date post hoc.[1] Accordingly, the trial court did not err in granting summary judgment in St. Paul's favor.

DECREE
For the foregoing reasons, the judgment of the trial court granting St. Paul Fire & Marine Insurance Company's Motion for Summary Judgment is affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Also, plaintiff directs this court's attention to Perkins v. Guaranty National Ins. Co., 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559. We find this case clearly distinguishable.