699 So.2d 1169 (1997)
NEW HAMPSHIRE INS. CO., Plaintiff-Appellee,
v.
Jeffrey R. GOWEN, et al., Defendants-Appellants.
No. 29842-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
*1171 Cook, Yancey, King & Galloway by Timothy B. Burnham, Shreveport, for Defendant-Appellant Hartford Underwriters Ins. Co.
Francis M. Gowen, Jr., Shreveport, for Defendants-Appellants Jeffrey R. Gowen, et al.
D. Brennan Hussey, Shreveport, for Defendant-Appellant American Employers Ins. Co.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, Shreveport, James A. Mijalis, for Plaintiff-Appellee.
Before NORRIS, STEWART and PEATROSS, JJ.
STEWART, Judge.
Jeffrey R. Gowen and David G. Cooper appeal the judgment of the trial court finding that only $20,000 of uninsured/underinsured motorist coverage was available on the insurance policy issued by New Hampshire Insurance Company to Chem-Air, Inc. and that Hartford Underwriters Insurance Company was entitled to the full $20,000 deposited in the registry of the court. New Hampshire answered the appeal. For the following reasons, we affirm.

FACTS
Gowen and Cooper were seriously injured in an automobile accident while occupying in a vehicle owned by their employer, Chem-Air, a Louisiana corporation, and insured by New Hampshire. Gowen and Cooper, both residents of Louisiana, were in the course and scope of their employment when the accident occurred in Alabama on August 25, 1990. The commercial automobile insurance policy was issued in Louisiana, and the vehicle involved was principally garaged in Louisiana. The other vehicle involved in the accident was underinsured.
On January 25, 1990, Chem-Air's president signed a form selecting lower UM limits of coverage for the insurance policy issued on December 16, 1989 for a term expiring on December 16, 1990. Two of three vehicles added to the policy after the inception date were added prior to the accident.
Gowen and Cooper sued New Hampshire for UM coverage. In response, New Hampshire filed a concursus proceeding in district court and deposited $20,000 in the registry of the court. The trial court ruled that only $20,000 of UM coverage was available on the commercial fleet insurance policy and that Hartford, the worker's compensation insurer, was entitled to the whole amount on deposit. Gowen and Cooper assign five errors on appeal. In their answer, New Hampshire assigns one error.

DISCUSSION

Addition and Deletion of Vehicles
In their first assignment of error, appellants assert that the trial court erred in finding that a separate rejection or selection of lower limits of UM coverage was not required by the addition of an vehicle to an automobile insurance policy during its initial term. Appellants contend that the addition of a vehicle is not a renewal, reinstatement or substitute policy as contemplated by La. R.S. 22:1406 D(1)(a)(i) and that, therefore, a separate waiver or selection of lower UM limits is necessary. Appellants heavily rely on Perkins v. Guaranty Ins. Co., 95-229 (La.App. 3d Cir. 11/2/95), 667 So.2d 559.
Recognizing strong public policy in favor of protecting innocent victims from uninsured or under insured motorists, UM coverage is deemed to exist in all automobile polices unless the insured expressly rejects or selects lower limits of UM coverage. The Louisiana UM statute is liberally construed to promote "fully recovery of damages by innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the negligent motorist is without insurance." Bullock v. Homestead Ins. Co., 29,536 (La.App.2d Cir. 6/20/97), 697 So.2d 712. See also Roger v. *1172 Estate of Moulton, 513 So.2d 1126 (La.1987); Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982); and Tapia v. Ham, 480 So.2d 855 (La.App. 2d Cir.1985). Statutory exceptions to the coverage requirement must be interpreted strictly. Carter v. Baham, 94-2809 (La.1/27/95), 649 So.2d 967; Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992); Washington v. Imperial Fire and Cas. Ins. Co., 28,434 (La. App.2d Cir. 6/26/96), 677 So.2d 599.
However, a distinction has been drawn between individual automobile liability policies and business automobile fleet policies. Although this court has not addressed the issue presented by the instant case, other appellate courts have discussed the distinction and have resolved that issue. In Bordelon v. Jackson, 499 So.2d 392 (La.App. 4th Cir. 1986), writ denied, 500 So.2d 412 (La.1987), the court determined that a new insurance policy did not result each time a vehicle was added to or deleted from an existing fleet policy. Relying on Bordelon, the court held that "neither public policy nor strict interpretation of La. R.S. 22:1406(D)(1)(a)(i) require us to insist that such rejections must be executed each time a vehicle is added to an existing fleet policy." Latiolais v. Liberty Mut. Ins. Co., 93-579, p. 3 (La.App. 3d Cir. 5/4/94), 640 So.2d 448, 450. In Chevalier v. Ream, 94-741 (La.App. 3d Cir. 12/7/94), 649 So.2d 746, the court found that the addition and deletion of vehicles was contemplated by the parties to a business fleet insurance policy and that, therefore, the insured was not required to execute a separate rejection or selection of lower UM limits when vehicles were added to or deleted from an existing fleet policy. Agreeing with Latiolais, the court concluded that such a "requirement would be unduly burdensome and impractical." Chevalier v. Ream, 94-741 (La.App. 3d Cir. 5), 649 So.2d at 748.
In Perkins v. Guaranty Ins. Co., supra, the court found that, under the circumstances of that case, "the addition of a vehicle to a commercial insurance policy ... is tantamount to issuing a new policy, which requires a new rejection of uninsured motorist coverage." 95-229 (La.App. 3d Cir. 4-5), 667 So.2d at 563. In that case, the court determined that the insured did not substitute vehicles regularly nor did the policy include a provision stating that the decision to accept or reject UM coverage would apply to any additions to the policy unless a change was requested in writing as did the insurance policy at issue in Chevalier.
In both Latiolais and Chevalier, the insured contemplated the addition and deletion of vehicles during the term of the commercial policy. However, in Perkins, the insured testified that he did not regularly substitute vehicles and, in fact, added only one vehicle. In all cases cited, the courts have focused primarily on whether the insured contemplated additions or deletions of vehicles to the existing commercial policy in determining whether a separate rejection or selection UM coverage would be required.
In the instant case, the record reflects that three vehicles were added and two were deleted during the term of the policy from December 16, 1989 to December 16, 1990. William Alexander, Chem-Air's president, testified that substitutions and replacements of vehicles would be required during the policy period. Dana Wood, the agent who handled the insurance coverage for Chem-Air, testified that the fleet policy issued by New Hampshire envisioned additions and deletions of vehicles during the term of the policy and that such additions and deletions were common for Chem-Air. Further, section 1(B) of the "Business Auto Coverage Form" discusses coverage for vehicles acquired after inception of the insurance policy.
Although the New Hampshire policy does not include language similar to the policy provision in Chevalier, the insured clearly contemplated the addition and deletion of vehicles during the policy term. In fact, Chem-Air added autos on January 22, 1990, April 5, 1990, and September 1, 1990, and deleted vehicles on February 7, 1990, and August 25, 1990. Requiring the insured to execute a separate rejection or selection of UM coverage each time a vehicle was added to or deleted from the commercial fleet policy would be "unduly burdensome and impractical."
We conclude that the addition or deletion of a vehicle did not constitute a new insurance *1173 contract which required the execution of a separate rejection or selection of UM coverage and find that the trial court was correct in ruling that a separate waiver or selection was unnecessary.

Contemporaneous Selection
In their second assignment of error, appellants assert that the trial court erred in finding a valid selection of UM coverage although not signed contemporaneously with the issuance of the New Hampshire policy. Appellants argue that Futch v. Commercial Union Ins. Co., 625 So.2d 1019 (La.1993), requires that a waiver of UM coverage or selection of lower UM limits must be executed contemporaneously with either the application or with the issuance of the insurance policy.
In Futch, the trial court found the UM waiver valid and granted summary judgment. Questioning whether a director of the corporation was authorized to sign the rejection of UM coverage and whether the insurer failed to give the corporation's officers an informed choice, the Louisiana Supreme Court determined that genuine issues of material fact existed regarding whether the waiver was a valid informed rejection, authorized by the corporation, and remanded the matter for trial on the merits. Writing for the majority, Justice Watson noted that the rejection of UM coverage was executed midway through the policy period and stated that the language of La. R.S. 22:1406 D(1)(a)(ii) providing that the form signed by the insured "which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered ..." implied that the "rejection or selection must be contemporaneous with a policy application or the policy's issuance." Futch v. Commercial Union Ins. Co., 625 So.2d at 1022. However, no other justice joined in that dicta which was impliedly rejected in Washington v. Savoie, 92-2957 (La.4/11/94), 634 So.2d 1176, and expressly rejected in Deville v. Allstate Ins. Co., 96-161 (La.App. 3d Cir. 10/9/96), 688 So.2d 1122.
In Washington, nearly six months after issuance of the policy on November 15, 1984, the insurer executed two endorsements: (1) Endorsement No. 16 selected lower UM limits for private passenger vehicles and specified an effective date of November 15, 1984 and (2) Endorsement No. 18 rejected UM coverage for all other vehicles and specified an effective date of November 15, 1985, which date both the insurer and insured alleged to be a typographical error corrected by the insurer but not until after accidents occurred. Reinstating the trial court's granting of summary judgment, the court reasoned:
Permitting corrections of alleged typographical errors in UM coverage rejections to reflect the parties' intent, after the occurrence of injuries to persons insured under the policy, would be inconsistent with strict requirements that this court previously has imposed upon rejection of UM coverage, as well the purpose of UM coverage to provide for protection of persons insured under the policy.
Washington, 92-2957 (La. 7), 634 So.2d at 1180. Nevertheless, the court found the rejection of UM coverage contained in Endorsement No. 18 valid and enforceable as written, implying that valid waiver or selection of lower UM limits may occur after effective date of the insurance policy.
In Deville, an automobile liability insurance policy was issued for the period beginning April 1, 1993 through March 31, 1994. After issuance of the policy, the insured executed a UM selection form on August 13, 1993. Finding the UM selection form, which complied with statutory requirements, valid, the court discussed whether selection of lower UM limits after issuance of the policy is legally effective. Not being "convinced the referenced language prevents an insured form subsequently making such election in writing, effective on a date," the court held that La. R.S. 22:1406 D(1)(a)(ii) did not require an insured to waive or select lower UM limits contemporaneously with the issuance of an insurance policy. Deville v. Allstate Ins. Co., 96-161 (La.App. 3d Cir. 6), 688 So.2d at 1125. See also, Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2d Cir.1986).
*1174 In the instant case, the commercial fleet policy was issued on December 16, 1989. On January 25, 1990, Alexander signed a UM selection indicating lower limits of $20,000. The accident occurred on August 25, 1990. Agreeing with the trial court that selection of lower UM limits "need not be signed contemporaneously with the application or the issuance of the insurance policy," we find Chem-Air's selection of lower UM limits valid and legally effective on the date of the accident.

Burden of Proof and Validity of UM form
In their third assignment of error, appellants assert that the trial erred in finding that the selection of lower UM limits was by a clear, unambiguous and unmistakable, affirmative act of the insured. Appellants argue that New Hampshire did not bear its burden of proving that selection of UM coverage was executed, in proper form, without ambiguity, by the proper person, i.e., that the insured made an informed selection of lower UM limits. Further, appellants contend that New Hampshire failed to produce any documentary evidence to indicate that the insured was fully informed of all UM coverage options.
In their fourth assignment of error, appellants assert that the rejection or selection of UM coverage was not in proper form resulting in an invalid waiver. Appellants claim that the form provided by New Hampshire is defective in that it fails to mention "bodily injury" and that no coverage options are provided which then requires the insured to affirmatively act to select different limits.
The insurer bears the burden of proving the insured rejected in writing UM coverage equal to bodily injury limits or selected lower limits of coverage. The insurer must provide sufficient information so that the insured has the opportunity to make an informed and meaningful selection of UM coverage options. Tugwell v. State Farm Ins. Co., supra; Nelson v. Ragan, 26,724 (La.App.2d Cir. 4/5/95), 653 So.2d 185. The form must include three options: (1) UM coverage equal to bodily injury limits in the insurance policy; (2) UM coverage lower that bodily injury limits, if liability coverage exceeds minimum amounts; or (3) no UM coverage. Tugwell v. State Farm Ins. Co., supra; Washington v. Imperial Fire and Cas. Ins. Co., supra; Nelson v. Ragan, supra. Additionally, the UM rejection/selection form must be separate from the insurance application, must advise the insured of coverage options, and must require the insured to consciously and affirmatively reject UM coverage by checking the appropriate option or by initialing or signing the rejection. Henson v. Safeco Ins. Cos., 585 So.2d 534 (La. 1991); Washington v. Imperial Fire and Cas. Ins. Co., supra; Nelson v. Ragan, supra.
The record establishes that New Hampshire proved by sufficient testimony and documentary evidence that the rejection/selection form complied with the statutory requirements and that Alexander clearly understood the coverage options and intentionally and unambiguously selected lower limits of UM coverage. The form is separate from the insurance application and provides three options of UM coverage. Alexander wrote $20,000 as his selection of lower UM limits and affixed his signature as named insured on the form. Further, his knowledge and understanding of insurance policies is evident from his deposition, and he stated repeatedly that he specifically intended to select lower UM limits in the amount of $20,000.
We find no merit in assignments of error three and four.

Worker's Compensation Intervenor
In their fifth assignment of error, appellants assert that the trial court erred in awarding the amount deposited in the registry of the court to Hartford without regard to apportionment of the tort victims' damages. Appellants argue that tort victims would be "unfairly and unconstitutionally" discriminated against by a blind application of the statute which provides dollar for dollar recovery by worker's compensation intervenors.
La. R.S. 23:1103 A(1) provides that "if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such *1175 damages shall be assessed solely in his favor." See also St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992).
The trial court concluded that Hartford's payments in excess of $200,000 would totally exclude recovery by the tort victims of any of the $20,000 deposited in the registry of the court. We find that the trial court was correct in awarding $20,000, the entire amount on deposit in the registry of the court, to be paid in "preference and priority and solely to Hartford."

New Hampshire's Answer
New Hampshire answered the appeal and assigns as error the application of the Louisiana UM statutes. New Hampshire argues that the language of La. R.S. 22:1406(D)(1)(a)(iii), "covering any accident which occurs in this state and involves a resident of this state", should be interpreted to mean that the UM statute only applies to accidents which occur in Louisiana and does not apply to this accident which occurred in Alabama.
As appellants' assignments of error have been resolved in New Hampshire's favor, a discussion of this assignment of error is unnecessary.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to appellants.
AFFIRMED.