757 So.2d 29 (1999)
Michael Joseph BARNICKEL
v.
Leon F. MYLES; L.D. Leasing Corp.; St. Francis Xavier Bus Services, Inc.; Cleveland Jefferson; Reliance National Indemnity; and the Hanover American Ins. Co.
No. 98 CA 2613.
Court of Appeal of Louisiana, First Circuit.
December 28, 1999.
Rehearing Denied February 15, 2000.
*30 Guy Modica, Sr., Baton Rouge, for Plaintiff/Appellee, Michael Joseph Barnickel.
John R. Keogh, Baton Rouge, for Defendant/Appellant, The Hanover American Insurance Company.
Sandra S. Rester, Baton Rouge, for Intervenor, The Paper Shack and Party Store.
BEFORE: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
This is an appeal from a certified partial summary judgment, wherein the trial court found that an insured was required to execute another UM waiver when an additional vehicle was added to its commercial automobile insurance policy. However, because there is a material fact at issue, the trial court's granting of summary judgment must be reversed.

FACTS
Plaintiff, Michael Barnickel, was an employee of The Paper Shack and Party Store, Inc. (The Paper Shack). Barnickel was involved in a motor vehicle accident on November 16, 1995, while operating a 1995 Chevrolet van owned by his employer. Barnickel sustained injuries and filed suit for damages against various defendants, including the Hanover American Insurance Company (Hanover), which had issued a commercial automobile liability policy covering the 1995 Chevrolet van.
Hanover issued the commercial automobile liability policy on April 17, 1995. A UM rejection in proper form was executed on May 9, 1995, by an authorized officer, Lionel Eltis, president of The Paper Shack. At inception, the policy covered two named vehicles, a 1988 Ford van and a 1991 Chevrolet van. The vehicle involved in the accident, a 1995 Chevrolet van, was purchased and added to the Hanover policy on or about October 4, 1995.
Hanover asserts that the UM rejection at the inception of the policy also rejects UM coverage of the 1995 Chevrolet van and, as a matter of law, there is no UM coverage afforded to Barnickel. Barnickel contends that Hanover's failure to obtain a separate UM rejection on the 1995 Chevrolet van involved in the accident rendered Hanover liable as a UM carrier under LSA-R.S. 22:1406 D(1)(a)(i).
Barnickel and Hanover filed cross-motions for summary judgment on the issue of UM coverage. The trial court granted Barnickel's motion for summary judgment and denied Hanover's motion, concluding that a new UM rejection form was required when the 1995 Chevrolet van was added by the Paper Shack to the commercial automobile liability policy issued by Hanover. Accordingly, the trial court *31 found that UM coverage for the 1995 Chevrolet van was not properly rejected, and therefore, the Hanover policy does provide UM coverage to Barnickel for this accident. Hanover appeals the judgment of the trial court.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSC.C.P. art. 966. Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 704 So.2d at 32-33.
Louisiana Revised Statute 22:1406 D(1)(a)(i) mandates UM coverage in an amount not less than the limit of bodily injury liability coverage, unless the insured rejects that coverage or selects lower limits. The general rule regarding the rejection of UM coverage is that an initial valid rejection or selection of lower limits by an insured is also valid for renewal, reinstatement, or substitute policies. LSA-R.S. 22:1406 D(1)(a)(i); Dempsey v. Automotive Casualty Insurance, 95-2108, pp. 7-8 (La.App. 1st Cir.6/28/96), 680 So.2d 675, 679. Courts have consistently held that the addition of a car to an individual policy, without changes in bodily insurance limits, amounts to an increase in that policy's coverage, which constitutes the issuance of a new policy requiring a separate UM rejection. See Dempsey, 680 So.2d at 681; Doyle v. Titan Indemnity Company, 629 So.2d 516, 520 (La.App. 5th Cir.1993); Tully v. Liberty Mutual Fire Insurance Company, 516 So.2d 435, 439 (La.App. 1st Cir.1987).
However, a distinction has been drawn between individual automobile liability policies and business automobile fleet policies. Fleet policies contemplate the addition and deletion of vehicles, and coverage is uninterrupted although vehicles are continually added and/or deleted. In Bordelon v. Jackson, 499 So.2d 392, 394 (La.App. 4th Cir.1986), writs not considered, 500 So.2d 412 (La.1987), the fourth circuit held that a new policy did not result each time a vehicle was added to or deleted from a fleet policy. This holding was followed by the third circuit in Latiolais v. Liberty Mutual Insurance Co., 93-579, p. 3 (La.App. 3rd Cir.5/4/94), 640 So.2d 448, 450, writ denied, 94-1420 (La.9/23/94), 642 So.2d 1289.
This rule was further examined by the third circuit in Chevalier v. Ream, 94-741 (La.App. 3rd Cir.12/7/94), 649 So.2d 746, which addressed the issue of whether an insured under a commercial automobile liability policy was required to execute a new *32 rejection of UM coverage when a new vehicle was added to the policy. The third circuit's focus concerned whether the commercial policy was similar to the business fleet policy in Latiolais by determining whether the addition and deletion of vehicles to the policy was contemplated by the parties. In reaching its conclusion, the third circuit examined the policy language and the testimony of the insured. See Chevalier, 649 So.2d at 748.
The policy in Chevalier contained the following language in the written rejection of UM coverage:
I understand that the choice indicated shall also apply to all future renewal or replacement policies and to any auto added to this policy, its renewal or replacement policy, until I request a change in writing. I also understand that this form is part of my policy.
Chevalier, 649 So.2d at 747. The insured in Chevalier also testified that it was his practice to repair or substitute vehicles regularly and that he always intended for his vehicles to have identical coverage, which did not include UM coverage. Chevalier, 649 So.2d at 748.
The third circuit used the same approach in Perkins v. Guaranty National Insurance Company, 95-229 (La.App. 3rd Cir.11/2/95), 667 So.2d 559, writ denied, 96-0759 (La.5/31/96), 673 So.2d 1033, in determining whether a new UM rejection form was required when a vehicle was added to an existing commercial automobile liability policy by examining whether additions and deletions of vehicles were contemplated by the parties. Once again, the court relied upon the policy language and the testimony of the insured regarding his intentions. Perkins, 667 So.2d at 563. However, in Perkins the court found the policy at issue did not contain a provision stating the decision to accept or reject uninsured motorist coverage would apply to any vehicle added to the policy unless a change was requested in writing. Moreover, the insured testified that he did not substitute vehicles regularly. Perkins, 667 So.2d at 563.
The second circuit also addressed the issue of whether new UM waivers are required when vehicles are added to a commercial automobile liability policy in New Hampshire Insurance Company v. Gowen, 29,842 (La.App. 2nd Cir.9/24/97), 699 So.2d 1169, writs denied, 97-2691, 97-2693 (La.1/9/98), 705 So.2d 1112. In that case, there was no Chevalier-type language included in the policy that clearly contemplated the addition and deletion of vehicles. The second circuit noted that in Latiolais, Chevalier, and Perkins, the primary focus was whether the insured contemplated additions and deletions of vehicles to the existing commercial policy. In New Hampshire, three vehicles were added, and two were deleted during a one-year policy term, which allowed the second circuit to conclude that "the insured clearly contemplated the addition and deletion of vehicles during the policy term." New Hampshire, 699 So.2d at 1172. Accordingly, the second circuit found that a new UM waiver was not required when a vehicle was added to the policy. New Hampshire, 699 So.2d at 1172-73.
In the present case, the Paper Shack had originally insured two vehicles under the Hanover policy. The 1995 Chevrolet van involved in the accident was added a few months after the effective date of the policy. Eltis waived UM coverage just prior to the effective date of the policy; however, when the 1995 Chevrolet van was added, he did not execute another UM waiver.
Eltis executed several affidavits in connection with the motions for summary judgment filed in the trial court. In the first affidavit dated February 25, 1998, Eltis stated "[I]t was not the intention nor the practice of The Paper Shack in 1995, nor is it the intention or the practice of The Paper Shack today, to regularly add, delete, or substitute vehicles in its automobile insurance policies."
*33 In an affidavit executed on March 16, 1998, Eltis indicated it was his intent to reject UM coverage on the Hanover policy. In a third affidavit dated May 21, 1998, Eltis stated that The Paper Shack acquired new vehicles or disposed of vehicles, depending upon the business needs of the company at any given time. Eltis further stated he never selected UM coverage for any vehicle owned by The Paper Shack, and it was not his intention to provide UM coverage for the 1995 Chevrolet van involved in the accident.
The intent of the insured is a critical factor in determining whether a commercial automobile liability policy is similar to a fleet policy which relieves the UM waiver requirement every time a vehicle is added to the coverage. See New Hampshire, 699 So.2d at 1172; Perkins, 667 So.2d at 563; and Chevalier, 649 So.2d at 748. We are confronted with conflicting statements concerning Eltis' intentions regarding adding and deleting vehicles from his policy. Accordingly, we find a material issue of fact exists, and that the grant of Barnickel's summary judgment was improper.

CONCLUSION
Based on the foregoing, the summary judgment granted in favor of the plaintiff, Michael Barnickel, is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein. All costs of this appeal are assessed to the plaintiff, Michael Barnickel.
REVERSED AND REMANDED.