702 So.2d 918 (1997)
Mary ISAAC, Plaintiff-Appellant,
v.
PATTERSON INSURANCE COMPANY, et al., Defendant-Appellee.
No. 97-608.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
*919 Robert Charles Clayton Thomas, Natchitoches, for Mary Isaac.
Gina L. Spann, Ruston, for Patterson Insurance Company, et al.
Before SAUNDERS, WOODARD and GREMILLION, JJ.
GREMILLION, Judge.
The plaintiff, Mary Isaac, appeals the trial court's judgment finding that she signed a valid waiver of uninsured motorist coverage, thus, dismissing her claims against her insurer, Safeway Insurance Company. We affirm.

FACTS
On March 2, 1996, Isaac, a guest passenger in a vehicle driven by Michael Sarpy, was injured when the vehicle rear-ended another vehicle. As a result of this accident, Isaac filed suit against Sarpy and his insurer, Patterson Insurance Company, and her own insurer, Safeway, for uninsured motorist (UM) coverage. In her petition, Isaac claimed that her rejection of UM coverage "was not done in accordance with the legal mandates concerning the rejection of uninsured motorist coverage." Thus, she claimed that she was entitled to UM coverage as though she had elected to carry such coverage. Safeway answered denying liability and cross-claiming against Sarpy as a defendant. Later, in a supplemental answer, Safeway denied coverage due to Isaac's valid waiver of UM coverage. Prior to trial, Isaac settled with and released all of her claims against Sarpy and Patterson. In the Partial Motion and Order to Dismiss, Safeway's claims against Patterson and Sarpy were dismissed with prejudice.
Following a bench trial held solely on the issue of UM coverage, the trial court held that the UM rejection form was valid under Louisiana law, that Isaac knowingly rejected UM coverage, and that she knowingly paid a lessor premium, thus, she had no UM coverage. Prior to the signing of the judgment, Isaac moved for a new trial for reargument purposes only. This motion was denied and judgment was rendered by the trial court. Isaac now appeals the trial court's finding of a valid waiver of UM coverage.

ISSUES
On appeal, Isaac raises three assignments of error:
1) The trial court erred in holding that the UM coverage rejection form admittedly signed by the appellant represented a valid waiver of UM coverage under Louisiana law.
2) The trial court erred in considering evidence outside of the four corners of the UM rejection form in reaching its ultimate legal and factual conclusions.
3) The trial court erred as a matter of law by failing to adhere to the well established *920 legal principle that it is the insurer's burden of proof to show that UM coverage was validly rejected.

ASSIGNMENTS OF ERROR NUMBER ONE AND THREE
In her first assignment of error, Isaac argues that the trial court erred in holding that the UM coverage rejection form signed by her was valid, since it did not place her in a position to make an informed rejection or a meaningful selection from the options provided by La.R.S. 22:1406(D)(1)(a)(i). She further argues that the trial court erred in placing the burden of proof on her to show that the waiver was invalid, instead of on Safeway to show that her rejection was legally perfected.
La.R.S. 22:1406(D)(1)(a)(i) mandates that UM coverage be provided to an insured in an amount equal to the bodily injury limits contained in the policy, unless the insured rejects in writing UM coverage or selects lower limits. The objective of the UM legislation is to promote full recovery for innocent automobile victims by making UM coverage available for their benefit. Willett v. Nat'l Fire and Marine Ins. Co., 594 So.2d 966 (La.App. 3 Cir.), writ denied, 598 So.2d 355 (La.1992). In order to discharge that objective, the statute is to be liberally construed and the statutory exceptions to the coverage requirement strictly construed. Exclusions from UM coverage must be clear and unmistakable. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to the bodily injury limits contained in the policy or selected lower limits. Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991).
In order to carry its burden of proof, the insurer must prove that the insured validly rejected UM coverage on a form which allowed the insured to make a meaningful selection from among the options provided by La.R.S. 22:1406(D)(1)(a)(i). A valid rejection occurs if the insured or his authorized representative expressly states in a document that UM coverage is rejected or selected in lower limits. Tugwell, 609 So.2d 195; Deville v. Allstate Ins. Co., 96-161 (La. App. 3 Cir. 10/9/96); 688 So.2d 1122. A form used by an insurer will not meet statutory requirements if it fails to inform an insured of an available option or forecloses an available option. Daigle v. Authement, 96-1662 (La.4/8/97); 691 So.2d 1213. However, if an insured is only purchasing the minimum bodily injury limits allowed by law, then the insurer need only inform the insured of the remaining two options, either rejection or selection of UM coverage. Id.
The UM coverage rejection form contained within Isaac's policy provided:
The applicant elects to REJECT protection against Uninsured Motorists as provided in Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950, Subsection D, which permits the insured named in the policy to reject insurance against loss caused by Uninsured Motorists, the undersigned (and each of them) do(es) hereby reject such insurance coverage, and it is hereby understood and agreed that such coverage will not be afforded any person by this policy; that this rejection of Uninsured Motorists Coverage applies with respect to all vehicles now insured under the policy as well as any vehicle which may be covered by the policy in the future regardless of whether it is owned by the insured on the date of execution of this rejection instrument.
A line is provided next to this provision for the insured's signature should they elect to reject UM coverage.
In accordance with the holding in Daigle, we find that the language in the policy on its face adequately meets the requirements of La.R.S. 22:1406(D)(1)(a) to constitute a valid rejection of UM coverage. The insured is informed by the express language of the policy that UM coverage must be rejected as per the statute's requirements. The language indicates that the law of this state allows UM coverage pursuant to Section 1406 of Title 22, Subsection D, unless the insured rejects this coverage. Thus, we hold that the rejection form is valid on its face.
*921 Isaac complains that she was not given the opportunity to make a meaningful selection from the options provided by statute because Safeway's form only offered her the option of rejecting UM coverage, nor did it explain that the failure to sign the signature line would activate such coverage. We disagree. This is similar to the argument put forward by the plaintiff in Daigle, 691 So.2d 1213, where the plaintiff complained that the insurer's form did not provide a means of affirmatively choosing UM coverage. There the court stated:
While such a format may be desirable, it is only one way of making sure that the applicant is informed of the available options and allowed to choose between them. In Tugwell, we noted that the task of informing the applicant of available options can be accomplished in several ways. It is not the job of the courts to draft insurance forms or to dictate the exact format or wording which must be used for a valid rejection of the mandated UM coverage. The legislature specifically left that task to the insurers. Moreover in Henson, we held that the statute does not require an affirmative act to choose coverage. Any affirmative signature or mark accepting coverage would be mere surplusage, since the coverage is automatically extended by operation of law. An applicant does not have to sign a separate document opting for coverage already provided in the policy. Such a document could be thrown away after the insured's execution of it without any effect whatsoever. The statute requires an affirmative act only if UM coverage is rejected altogether or, in an appropriate case, where lower UM limits are statutorily permitted and desired. Accordingly, we cannot conclude that Louisiana Indemnity's failure to set up its form so as to require a penstroke in favor of coverage renders the form defective.
Id. at 1216 (footnote omitted).
Therefore, we hold that Isaac's first assignment of error is without merit.
We also disagree with Isaac's argument the trial court erroneously placed the burden of proof on her to show that the UM coverage rejection form was invalid, instead of on Safeway to prove that the rejection form was legally perfected. Isaac bases her argument on a statement by the trial court:
Let me tell you how I do these things. We start from the basic premise that she has rejected it. And that's going to be the ruling of the Court, unless some appellate level court has said that this rejection form is illegal, improper, or unenforceable.
....
But as we sit right now, she has rejected uninsured motorists coverage.
Isaac claims that the trial court made these statements during her case-in-chief, before Safeway had a chance to present any evidence to the contrary. However, this argument ignores the fact that the statement was made by the trial court while counsel for Safeway was questioning Isaac and after Isaac's insurance application had already been admitted into evidence. Prior to the statements by the trial court, Isaac had already admitted that she was able to read, that she was not prevented from asking questions during the application process, and that her signature appeared in the space provided for rejection of UM coverage. The trial court obviously had decided that Safeway had carried its burden of proof with the evidence which was already in the record. Considering the evidence, we find no merit with this assignment of error. The judgment of the trial court is affirmed.

ASSIGNMENT OF ERROR NUMBER TWO
In her next assignment of error, Isaac argues that the trial court erred by considering evidence other than the UM coverage rejection form in reaching its decision. Although she does not specifically identify the extrinsic evidence, Isaac evidently means the testimony from the insurance agent, Nell Wilson.
Wilson testified that, although she could not recall whether she or her assistant filled out Isaac's insurance application, that her normal procedure would be to ask whether the person desires to purchase UM coverage and to explain the coverage. She stated that she explains that the coverage is optional. She further stated that the coverage will *922 affect a monthly premium by increasing it by approximately ten dollars a month. Wilson identified Isaac's signature rejecting UM coverage and stated that Isaac never returned to her requesting such coverage, because she never executed an endorsement requesting additional coverage.
In addition to Wilson's testimony, the trial court could also consider the remainder of Isaac's application for insurance. The form, in listing the type of coverage to be purchased by Isaac and the limits of that coverage, contains no coverage or premiums pertaining to UM coverage. Thus, it was obvious that Isaac did not wish to purchase this coverage, especially in view of the agent's interest in selling the coverage.
In Alford v. Woods, 614 So.2d 1299, 1302 (La.App. 3 Cir.), writ denied, 617 So.2d 915 (La.1993), the court, in relying on extrinsic evidence to determine the validity of a rejection form, stated:
Appellant's contention of inadmissible parol and extrinsic evidence is without merit. Although parol evidence may not be introduced to vary the actual terms or provisions of a policy, evidence may be introduced to determine whether a policy is in force. Rockhold v. Dept. of Transportation and Development, 528 So.2d 749 (La. App. 4th Cir.1988), w.d., 533 So.2d 21 [(La. 1988) ]. At issue in the matter sub judice is whether uninsured motorist coverage was in force and effect at the time of the accident.
Thus, we find that the trial court did not err in considering Wilson's testimony in reaching its decision. This assignment of error is dismissed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing the claim of the plaintiff-appellant, Mary Isaac, is affirmed, and the costs of this matter are assessed against her.
AFFIRMED.
WOODARD, J., concurs in the result.