725 So.2d 43 (1998)
Robert and Karen SAVANT, Plaintiffs-Appellees,
v.
AMERICAN CENTRAL INSURANCE COMPANY, et al., Defendants-Appellants.
No. 98-542.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
*44 David O'Shea Walker, Alexandria, for Robert and Karen Savant.
Patrick J. Briney, Lafayette, for American Central Ins. Co.
Keith Michael Borne, Lafayette, for Safeway Ins. Co.

EN BANC
Two questioned uninsured motorist coverages are the issues in this personal injury appeal. While employed with K & K Water in 1995, Robert Savant was involved in an automobile accident with a vehicle driven by James Ardoin. He and his wife settled his claim for the policy limits against the Ardoin insurer. The Savants sued for coverage under two alleged uninsured motorist policies. One claim was against their own automobile insurer, Safeway Insurance Company. The other was against American Central Insurance Company, K & K's automobile insurer.
The two insurers each moved for summary judgment based on the argued validity of the uninsured motorist rejection forms and the language in the policies. All parties agreed to try the issues of insurance coverage on the merits in a bifurcated setting. After the hearing a judgment was signed finding that the policies issued by American Central and Safeway provided uninsured motorist coverage by operation of law. Both American Central and Safeway appeal. We affirm.

UNINSURED MOTORIST COVERAGE
The trial court found that Safeway's uninsured motorist (UM) rejection form did not meet the legal requirements necessary for an effective rejection. Although there are no problems with the form used by American Central, the trial court found that the UM rejection form relied upon was signed contemporaneously with an application for insurance, and that during the applicable policy term, there were new endorsements which changed American Central's exposure for liability damages requiring a new UM rejection which was not obtained. We will address the issues pertaining to each insurance company separately.

Safeway Insurance Company (Savant's Insurer)
Safeway argues that the UM rejection form executed by Savant complied with the statutory and jurisprudential authority and effectively rejected coverage. It asks this court to find that its policy does not provide UM coverage for the accident.
The UM rejection form signed by Savant provides:
*45
 REJECTION OF UNINSURED
 MOTORIST COVERAGE
 The applicant elects to REJECT protection against Uninsured
 Motorists as provided in Section 1406 of Title 22 of
 the Louisiana Revised Statutes of 1950, Subsection D,
 which permits the insured named in the policy to reject
 insurance against loss caused by Uninsured Motorists, the
 undersigned (and each of them) do(es) hereby reject such
 insurance coverage, and it is hereby understood and
 agreed that such coverage will not be afforded any person
 by this policy; that this rejection of Uninsured Motorists
 Coverage applies with respect to all vehicles now insured
 under the policy as well as any vehicle which may be
 covered by the policy in the future regardless of whether it
 is owned by the insured on the date of execution of this
 rejection instrument.
 _______________________ ___________________________
 Signature of Agent/Date Signature of Applicant/Date
In Daigle v. Authement, 96-1662 (La.4/8/97); 691 So.2d 1213, 1215, discussing the statutory requirements of what a UM rejection must contain, the supreme court reiterated its holding in Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), that a UM rejection form must contain options disclosing: "UM coverage equal to bodily injury limits in the policy, UM coverage lower that [sic] those limits, or no UM coverage." The supreme court then further held that "when an applicant elects to purchase only the minimum bodily injury limits allowable, the option of selecting UM coverage at limits lower that [sic] those in the policy is foreclosed by law pursuant to La.R.S. 22:1406 D(1)(a)(i) and La.R.S. 32:900(B)(2)." Id. (footnote omitted).
In the present case Savant purchased bodily injury coverage in the minimum available limits: $10,000 each person/ $20,000 per occurrence. Therefore, Safeway was not required to offer or explain the absence of a lower limit. However, Safeway was still required to inform Savant of the two remaining available options: UM coverage equal to bodily injury limits in the policy or no UM coverage.
In support of its position that the UM rejection language in its policy is sufficient, Safeway cites Isaac v. Patterson Insurance Company, 97-608 (La.App. 3 Cir. 10/8/97); 702 So.2d 918, writ denied, 97-2806 (La.1/30/98); 709 So.2d 709. This court held that identical language met the requirements of La.R.S. 22:1406(D)(1)(a) to constitute a valid rejection of UM coverage.
However, we have to disagree with the panel which wrote that case. The language in the policy clearly indicates the choice of no UM coverage at all. However, the language does not inform Savant in any manner whatsoever that UM coverage equal to bodily injury limits in the policy was available. We agree with Judges Woodard and Peters in a published opinion on a writ application to this court, Dugas v. Benoit, 95-1653 (La.App. 3 Cir. 5/31/96); 677 So.2d 530. Judges Woodard and Peters dissented in part finding that identical language was legally deficient in its failure to apprise the insured of her statutorily granted rights. We note that the writ was remanded by the supreme court to this court for reconsideration in light of Daigle. Dugas v. Benoit, 96-1735 (La.5/30/97); 694 So.2d 224. However, the subsequent ruling by this court was not published.
We also note that identical language was involved in Williams v. National Car Rental System, 96-442 (La.App. 5 Cir. 1/28/97); 688 So.2d 144. The fifth circuit found that it was invalid because it only allowed the insured to reject UM coverage. Likewise in Washington v. Imperial Fire & Cas. Ins., 28,434 (La.App. 2 Cir. 6/26/96); 677 So.2d 599, very similar language was used in the UM coverage *46 section of the policy. The second circuit found that this language did not suggest that the insured would have the protection of UM coverage at the minimum liability coverage amounts if she did not reject the UM coverage.
The expression of a desire not to have UM coverage, however clear, does not constitute a valid rejection if the written rejection form does not meet the formal requirements of the law. Wilkinson v. Louisiana Indemnity, 96-0447 (La.App. 1 Cir. 11/8/96); 682 So.2d 1296, writ denied, 96-2920 (La.6/13/97); 695 So.2d 964.
Safeway's rejection form signed by Savant does not meet the formal requirements of the law since it failed to inform him that he would have UM coverage at the minimum limits if he did not reject UM coverage. Therefore, because it was not a valid rejection, the policy is deemed to provide UM coverage at the minimum required limits.

American Central Insurance Company
A brief factual history regarding the issuance of the business automobile policy by American Central to K & K is required. Effective May 3, 1990, American issued its first automobile liability policy to K & K. The policy was effective May 3, 1990, through May 3, 1991. On May 3, 1990, James M. Kilpatrick signed a UM form selecting UM limits of $500,000. Kilpatrick is the president of K & K. The policy was subsequently renewed for May 3, 1991, through May 3, 1992. However, on May 3, 1991, Kilpatrick signed a UM form rejecting UM coverage on all automobiles. The policy was renewed the following year also.
Another renewal of the policy was issued for May 3, 1993, through May 3, 1994. However, the insurance was canceled effective May 3, 1993, because the insurance of K & K was placed with a new agent, Hebert & LeBlanc, Inc. Previously, the policies had all been issued by I.S.A. Stewart Insurance Agency. A new business automobile policy was issued on April 20, 1993, by American Central to K & K through Hebert & LeBlanc, Inc., with effective dates of May 3, 1993, through May 3, 1994.
It was not until April 19, 1994, that George T. Kilpatrick, vice-president of K & K, signed a new UM form rejecting all UM coverage. Effective May 3, 1994, through May 3, 1995, American Central renewed the policy through Hebert & LeBlanc. This is the policy that was in effect at the time of the accident. No additional UM form was signed.
American Central claims that the UM form signed on April 19, 1994, was valid for the policy in effect at the time of the accident. It claims that this policy was merely a renewal, and it was not necessary for a new UM form to be signed. American Central also claims that the trial court erred in finding that a rejection of UM coverage which is not contemporaneous with the application for insurance is invalid. We will address each of these issues separately.

Timing of UM Rejection
K & K purchased its new automobile business policy from Hebert & LeBlanc for the policy period May 3, 1993, through May 3, 1994. A UM rejection form was signed on April 19, 1994. Although the insurance was purchased through a different agent, American Central still provided the insurance.
La.R.S. 22:1406(D)(1)(a)(ii) provides in pertinent part that "[t]he [UM] form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective or whether physically attached thereto."
Declining to follow the dicta in Futch v. Commercial Union Ins. Co., 625 So.2d 1019 (La.1993), this court has previously discussed this precise issue and held that the valid rejection of or reduction in UM coverage may occur after the issuance of an insurance policy. Deville v. Allstate Ins. Co., 96-161 (La.App. 3 Cir. 10/9/96); 688 So.2d 1122. However, the rejection of UM coverage is only effective from the day it is executed. Id. Other courts agree with this holding. New Hampshire Ins. Co. v. Gowen, 29,842 (La.App. 2 Cir. 9/24/97); 699 So.2d 1169, writs denied, 97-2691, 97-2693 (La.1/9/98); 705 So.2d 1112, and Moyles v. Cruz, 96-0307, 96-0308 (La.App. 4 Cir. 10/16/96); 682 So.2d *47 326, writ denied, 96-3066 (La.2/7/97); 688 So.2d 504. Therefore, we find that the rejection of UM coverage signed on April 19, 1994, was a valid rejection even though it was not executed simultaneously with the policy. However, it only became effective starting April 19, 1994.
Effect of April 19, 1994 UM Rejection on Subsequent Policy
We next must consider whether this UM rejection was valid for the policy issued for May 3, 1994, through May 3, 1995, which was the policy in effect at the time of the accident. The trial court found that a new rejection of UM coverage was required since there were new endorsements subsequent to the signing of the UM rejection form on April 19, 1994. It found that these new endorsements increased the policy coverage. In other words, this was a new policy when these endorsements were made which required a new UM rejection.
American Central admits that there were endorsements during the policy period in question in which vehicles were added and deleted and additional insureds were added. It claims that these changes in the business automobile policy did not constitute a new policy, and therefore, a new UM rejection form was not required.
La.R.S. 22:1406(D)(1)(a)(i) provides in pertinent part regarding UM coverage that "[s]uch coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates."
This court discussed the difference between renewal, reinstatement, and substitute policies in Bryant v. Viking Ins. Co. of Wisconsin, 579 So.2d 1241, 1242-1243 (La.App. 3 Cir.1991) as follows:
La.R.S. 22:636.1(A)(5) defines a "renewal" policy as one issued and delivered to replace "at the end of the policy period" a policy previously issued and delivered by the same insurer. A renewal can therefore occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs after the end of the first policy period. A renewal contemplates uninterrupted coverage.
....
The distinction between a substitute and reinstated policy is given in 18 Couch on Insurance 2d §§ 69.1-69.3, Revival and Reinstatement. If there is coverage and an agreement is made for a different coverage, there is a substitution of policies. To reinstate an insurance policy means to restore the insured to all the benefits accruing under the policy contract. For there to be a reinstatement, it is necessary that there be an interval during which the insured no longer is covered by insurance.
Ordinarily, when there are changes in the insurance policy which involve the addition of insureds or vehicles, the policy is a new policy which requires the execution of new UM forms. See Dempsey v. Automotive Cas. Ins., 95-2108 (La.App. 1 Cir. 6/28/96); 680 So.2d 675.
As part of its business operations, K & K purchases business automobile liability coverage for the vehicles used in its business. It purchases what is commonly called a "fleet" policy. "[A] fleet policy (by its nature) contemplates the addition and subtraction of vehicles from coverage." Latiolais v. Liberty Mut. Ins. Co., 93-579, p. 3 (La.App. 3 Cir. 5/4/94); 640 So.2d 448, 450, writ denied, 94-1420 (La.9/23/94); 642 So.2d 1289. This court further stated that:
Although cars were continually added to the fleet policy, there was uninterrupted coverage. Fleet policies envision such additions; and, the insured is not required to execute [sic] separate rejection when each new vehicle is added to these commercial policies. This requirement would be unduly burdensome and impractical. Neither public policy not strict interpretation of La.R.S. 22:1406(D)(1)(a)(i) require us to insist that such rejections must be executed each time a vehicle is added to an existing fleet policy.
In Perkins v. Guaranty Nat. Ins. Co., 95-229, (La.App. 3 Cir. 11/2/95); 667 So.2d 559, writ denied, 96-0759 (La.5/31/96); 673 So.2d 1033, this court held that a new rejection of *48 UM coverage was required when a new vehicle was added to a commercial automobile policy where the insured did not substitute vehicles regularly and the policy did not contain a provision stating that the decision to accept or reject UM coverage would apply to any vehicle added to the policy unless the change was requested in writing. The court found that under these circumstances, the addition of a vehicle to a policy, without changes in bodily insurance limits, was tantamount to issuing a new policy.
George Kilpatrick testified by deposition and in an affidavit that it was a normal business practice of K & K to regularly add and substitute vehicles under the policy. Rodney Manning, a senior commercial underwriter, testified to the many endorsements made to the policy in question. He testified that during this policy period several vehicles were added, and several vehicles were deleted. The policy also provides in Section (I)(B) that "[i]f symbols 1, 2, 3, 4, 5 or 6 are entered next to coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period." Liability coverage has a symbol 1; therefore, the policy contemplates the addition of vehicles for liability purposes for which coverage is automatically provided. We find that, under these circumstances, a new UM rejection form was not necessary when vehicles were added and deleted to the fleet policy issued by American.
However, in the present case we also have additional named insureds being added to the policy. These additional insureds were clients of K & K which requested that they be added to K & K's business automobile policy. Kilpatrick explained that K & K does a lot of business in industrial and commercial complexes where it brings its trucks in for delivery or repair on equipment. These businesses require that they be named as additional insureds. Manning testified that, during the policy period in question, ten businesses were added as additional insureds.
As additional insureds named in the policy, these businesses then became entitled to the protections offered by the American policy. One of these protections would be that of UM coverage. La.R.S. 22:1406(D)(1)(a)(i) provides that "the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits." (emphasis supplied). Citing Huguet v. State Farm Mut. Auto. Ins. Co., 619 So.2d 186 (La.App. 3 Cir.), writ denied, 625 So.2d 1059 (La.1993), the first circuit held that where a policy lists several entities as named insureds, any named insured has the authority to reject or select lower UM limits. Haney v. Zurich Ins. Co., 96-0393 (La.App. 4 Cir. 9/22/96); 680 So.2d 1270, writ denied, 96-2443 (La.12/6/96); 684 So.2d 933. See also Odom v. Johnson, 97-546 (La.App. 3 Cir. 12/10/97); 704 So.2d 1254, writs denied, 98-0778, 98-0826, 98-0876 (La.5/1/98); 718 So.2d 419, 420, 421.
Therefore, the question becomes whether or not the addition of these named insureds had the effect of creating a new policy which would require a new UM rejection form. American Central argues that the addition of insureds on a fleet policy should be treated like the addition of vehicles. However, we find no indication in the record nor has American Central pointed to any support other than its own argument that a fleet policy normally envisions the addition of insureds to the policy. There is no language in the policy itself indicating that the addition of insureds is a common practice in fleet policies.
Bordelon v. Jackson, 499 So.2d 392 (La. App. 4 Cir.1986), writ not considered, 500 So.2d 412 (La.1987), was one of the first cases to hold that a new UM rejection form was not required each time a new vehicle was added to a fleet policy. The policy in that case provided that each new car purchased by the named insured during the policy period was automatically provided with the same coverage provided on all other vehicles already owned by the named insured.
As this court stated in Latiolais, 640 So.2d 448, and followed in Chevalier v. Ream, 94-741 (La.App. 3 Cir. 12/7/94); 649 So.2d 746, fleet policies envision additions of vehicles. This is why fleet policies contain language *49 which provides that an auto acquired will be covered under the terms of the policy. However, there is no similar language for insureds. Fleet policies do not envision the addition of insureds. Under the circumstances in which insureds are added to the policy, the principles governing the application of UM coverage in individual liability policies would apply.
When the addition of an insured does not have the effect of increasing the policy's coverage, there is no new policy which would require a new UM rejection form. Wilkinson v. Louisiana Indemnity, 96-0447 (La. App. 1 Cir. 11/8/96); 682 So.2d 1296, writ denied, 96-2920 (La.6/13/97); 695 So.2d 964. In Wilkinson a spouse was added as a named insured after the issuance of the policy. However, the spouse was covered before she was added since the definition of "insured" included a "spouse."
On the other hand, in Dempsey v. Automotive Cas. Ins., 680 So.2d 675, the endorsement to an automobile insurance policy that added another person as an insured created a new policy. The first circuit found that the addition of an insured, without any change in the bodily injury limits, increased the policy's coverage such that the policy was not a substitute policy. Unlike Wilkinson, the policy in Dempsey did not already provide coverage to the insured being added.
This is exactly the situation in this case. Although American Central offered testimony that its policy contemplates the addition of insureds, we do not find that it does. When these businesses were added as additional insureds, the policy's coverage increased, and a new policy was created. Because no new UM form was executed upon the issuance of the new policy, American Central's policy is deemed to provide UM coverage equal to the limit of bodily injury liability coverage. La.R.S. 22:1406(D)(1)(a)(i).
For the above reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to Safeway Insurance Company and American Central Insurance Company.
AFFIRMED.
DECUIR, J., dissents and assigns reasons.
GREMILLION, J., dissents in part and would find the Safeway Insurance Company UM rejection form is valid for the reasons given in Isaac.
DECUIR, Judge, dissenting.
I respectfully dissent. The majority opinion continues an unpleasant trend of judicial paternalism in this state. Implicit in the majority opinion is a belief that the citizens of this state are not competent to read and understand an uninsured/underinsured motorist rejection form unless it is drafted in the most simplistic terms. I cannot in conscience endorse that implication.

SAFEWAY UM REJECTION FORM
The question before us is very narrow and of limited value as a precedent. It deals only with a particular Safeway UM rejection form and applies only to forms with identical language. It has absolutely no applicability to any other UM rejection form utilized by Safeway or any other insurer. Moreover, the prospective application of this decision has been severely curtailed by the actions of the legislature.
The Omnibus Premium Reduction Act of 1997 amended La.R.S. 22:1406 to provide that in the future all UM rejection elections must be made on a form promulgated by the Department of Insurance. The legislation became effective on September 6, 1998. Forms confected prior to that date are effective only until the next renewal date. Id. Thus, the majority's opinion merely invalidates a UM rejection form which has been rendered ineffective in the future by operation of law.
In any event, despite its limited application, I must dissent from the majority's finding that the Safeway UM rejection form is invalid. The form is more than sufficient to allow the competent citizens of this state to make the rational economic decision to reject UM coverage. This court has so held on *50 previous occasions and, for the reasons assigned in Isaac v. Patterson Insurance Company, 97-608 (La.App. 3 Cir. 10/8/97); 702 So.2d 918, I would do so again. See also Dugas v. Benoit, 95-1653 (La.App. 3 Cir. 5/31/96); 677 So.2d 530.

ADDITION OF INSUREDS
I turn now to the more substantial issue and perhaps the actual impetus for an en banc panel. Neither K & K nor American Central dispute that K & K intended to reject UM coverage. Instead the plaintiff, who was not a party to the contract, contests the validity of K & K's rejection in order that he might benefit from UM coverage for which neither he nor his employer paid. Unable to legitimately invalidate American Central's UM rejection form, the majority turns to our colleagues of the first circuit for a way to find coverage for the plaintiff. Following Dempsey v. Automotive Cas. Ins., 95-2108 (La.App. 1 Cir. 6/28/96); 680 So.2d 675, the majority finds that each time new insureds are added to a policy a new policy is created and a new UM rejection is required.
I must respectfully dissent. We are not required to follow our colleagues of the first circuit. The first circuit's decision in Dempsey is based on the premise that adding new insureds increases coverage, thereby, creating a new policy. Such a conclusion is unnecessary. Adding insureds did not change the ownership of the policy. The policy limits did not change. Only the list of named insureds changed. Apparently, American Central did not believe this expanded its coverage as there is no evidence that K & K was required to submit a new application or charged an additional premium despite adding ten new insureds during the policy year. Both K & K and American Central asserted that this was merely a routine part of doing business.
A finding that no new UM rejection form was required denies no one rights to which they are entitled by law. The majority clearly asserts that UM coverage is not applicable where any insured named in the policy rejects the coverage or selects lower coverage in writing. La.R.S. 22:1406(D)(1)(a)(I); Odom v. Johnson, 97-546 (La.App. 3 Cir. 12/10/97); 704 So.2d 1254. In this case, K & K had the authority to reject for all insureds and had in fact done so. No added insured had the authority to select UM over K & K's rejection. Id. Therefore, the majority opinion merely requires K & K to execute redundant paperwork.
Perhaps this type of requirement is warranted when dealing with individual automobile policies which are unlikely to have numerous changes in insureds during the policy year. This is not such a case. K & K is a business entity which adds numerous insureds during the policy period. These additions are mere formalities required for access to some job sites. Requiring new UM rejection forms in these circumstances serves no practical purpose and creates yet another litigation based restraint on the free flow of commerce.
The owner of the policy and the issuer of the policy agree that their contract contemplated the addition of insureds during the policy period. This may be of little relevance in determining the validity of a UM rejection form. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). It may even be of limited relevance in a contract dispute between the owner and a insured where the policy language is clear. La.Civ.Code art. 2046. However, I believe it should be of the utmost importance where a third party challenges a contract between the parties. To find otherwise opens every word of an insurance policy up to attack by any and every non-party seeking to circumvent workers' compensation laws or otherwise access a "deep pocket." The majority opinion encourages plaintiffs to litigate every word and phrase of an insurance contract in the hopes that a paternalistic court will find a deficiency on which to base its invalidation of a UM rejection. I cannot subscribe to such an opinion.

CONCLUSION
Despite a public policy in favor of UM coverage, this court is not required to find ways to invalidate the decision of rational adults to reject UM coverage. We are certainly not required to find that by adding named insureds an insurer provides additional *51 coverage for which the insured did not pay, in order to justify our decision that the insurer also provides UM coverage for which the insured did not pay. Insurance companies are required by law to provide UM coverage. Consumers are not required by law to purchase it. When consumers make the economic decision not to purchase coverage, we should respect that decision and require third parties to do likewise.
For the foregoing reasons, I respectfully dissent.