J^PICKETT, Judge.
The plaintiff, Sara Plummer, appeals a judgment of the trial court granting summary judgment in favor of the defendant, Safeway Insurance Company. For the following reasons, we reverse and remand.
FACTS
This appeal arises from an automobile accident that occurred on December 4, 1994, in Lafayette, Louisiana. The accident involved vehicles driven by Elder M. Roy and Bobby Hope. The plaintiff, Sara Plummer, was a guest passenger in the Hope vehicle. As a result of the accident, Ms. Plummer suffered injuries to her neck and back.
|gOn December 4, 1995, Ms. Plummer filed an original petition for damages naming Mr. Roy and his insurer, Allstate Insurance Company (Allstate), as defendants. She then filed a first amended/supplemental petition for damages adding Mr. Hope’s liability insurer, Safeway Insurance Company (Safeway), as a defendant on October 28, 1997. Mr. Hope obtained the policy through The Auto Insurance Center in Lafayette, Louisiana on August 12, 1994. Thereafter, on January 2, 1998, a motion and order of dismissal was filed dismissing Allstate and Mr. Roy as defendants as all issues between them and Ms. Plummer were settled. On April *23 13, 1998, Safeway filed a motion for summary judgment claiming Ms. Plummer had no cause of action against them since Mr. Hope had rejected uninsured motorist (UM) coverage when he purchased his automobile liability insurance policy.
A hearing on the matter was held on May 26, 1998. Following the hearing, the trial court granted Safeway’s motion for summary judgment. A judgment to this effect was signed on the same day. Subsequently, an amended judgment granting the motion for summary judgment and dismissing Ms. Plummer’s suit with prejudice was signed on May 29, 1998. Ms. Plummer now appeals.
OPINION
Ms. Plummer asserts one assignment of error in her appeal, namely:
(1) The trial court committed reversible error in relying upon legally insufficient evidence in order to resolve a material fact issue.
a) The trial court committed reversible error in dispensing with the mandatory requirements of La.Code | aCiv.P. art. 967 which requires that affidavits “shall be made on personal knowledge, shall set forth such facts as would be admissible into evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.”
b) The trial court committed reversible error in dispensing with the mandatory requirements of La. Code Civ.P. art. 967 that require “sworn or certified copies of all papers or parts thereof referred to in an affidavit.”
c) The trial court committed reversible error in granting the defendant’s motion for summary judgment because genuine issues of material fact existed sufficient to defeat the defendant’s motion for summary judgment.
Appellate courts review summary judgments de novo, using the same criteria that governs the trial court’s consideration of the appropriateness of summary judgment. Potter v. First Federal Savings & Loan Ass’n of Scotlandville, 615 So.2d 318 (La.1993); Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342 (La.1991). Thus, we shall conduct a de novo review of the trial record in this matter to determine if summary judgment was properly granted.
Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La.Code Civ.P. art. 966(B). Summary judgment is now favored and it shall be construed to “secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969.” La.Code Civ.P. art. 966(A)(2). The mover’s burden of proof is set forth in La.Code Civ.P. art. 966(C):
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support Lsufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
*24 Affidavits
La. Code Civ.P. art. 967 provides in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, 'if appropriate, shall be rendered against him.
In the instant case, Ms. Plummer argues that the affidavits of Chris Hidalgo and Ken Hudspeth are defective and should not be considered. Specifically, Ms. Plummer alleges that the affidavits do not meet the requirements of La.Code Civ.P. art. 967 in that they were not based upon personal knowledge and Mr. Hidalgo and Mr. Hudspeth were not competent to testify in this matter. After reviewing the entire record, we do not agree with Ms. Plummer’s argument.
Mr. Hidalgo’s affidavit states: (1) That he is the Underwriting Manager at Safeway and, in that capacity, he reviewed Mr. Hope’s liability insurance policy; (2) that Safeway received an application for insurance dated August 12, 1994, completed by Mr. Hope, in which UM coverage was rejected; (3) that the policy remained the same between the date of execution and the date of the accident; and (4) the Safeway exhibits attached to the affidavit were true and correct copies.
Mr. Hudspeth’s affidavit states: (1) That he is the president of The Auto Insurance Center and he has reviewed the files relative to the automobile liability | ¡^insurance policy issued by Safeway to Mr. Hope; (2) that Mr. Hope applied for the policy with Safeway through his agency, at which time he rejected UM coverage; (3) that it is the custom of The Auto Insurance Center to inform each insurance applicant about UM coverage; (4) that Mr. Hope executed a second UM coverage waiver; and (5) that the exhibits attached to his affidavit were true and correct copies.
It is clear that both Mr. Hidalgo and Mr. Hudspeth had personal knowledge of the information they provided in their affidavits. Both personally reviewed the files and gave a sworn affidavit regarding what information he elicited from the files. Furthermore, as an Underwriting Manager, Mr. Hidalgo is more than competent to provide testimony regarding information contained in Mr. Hope’s file. Likewise, as the president of The Auto Insurance Center, Mr. Hudspeth is also competent to provide testimony regarding the information he reviewed in the Safeway files. Furthermore, Mr. Hudspeth assisted Mr. Hope at The Auto Insurance Center during the application process on August 12, 1994.
Accordingly, we find no error in the trial court’s reliance on the affidavits of Mr. Hidalgo and Mr. Hudspeth in this matter.
Genuine Issue of Material Fact
Ms. Plummer also alleges that genuine issues of material fact existed that would preclude the trial court from granting Safeway’s motion for summary judgment. Particularly, she alleges that the UM rejection form used in the application fails to comply with the statutory and jurisprudential authority, and the second UM rejection form was never executed by Mr. Hope and therefore, not authentic.
The UM rejection form used in the insurance application and signed by Mr. Hope provides:
*25 REJECTION OF UNINSURED MOTORIST COVERAGE
|fiThe applicant elects to REJECT protection against Uninsured Motorists as provided in Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950, Subsection D, which permits the insured named in the policy to reject insurance against loss caused by Uninsured Motorists, the undersigned (and each of them) do(es) hereby reject such insurance coverage, and it is hereby understood and agreed that such coverage will not be afforded any person by this policy; that this rejection of Uninsured Motorists Coverage applies with respect to all vehicles now insured under the policy as well as any vehicle which may be covered by the policy in the future regardless of whether it is owned by the insured on the date of execution of this rejection instrument.
Signature of Applicant
We have previously discussed the validity of this exact language in a case involving Safeway in Savant v. American Central Insurance Company, 98-542 (La.App. 3 Cir. 12/9/98), 725 So.2d 43. In that matter, we stated:
In Daigle v. Authement, 96-1662 (La.4/8/97); 691 So.2d 1213, 1215, discussing the statutory requirements of what a UM rejection must contain, the supreme court reiterated its holding in Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), that a UM rejection form must contain options disclosing: “UM coverage equal to bodily injury limits in the policy, UM coverage lower that [sic] those limits, or no UM coverage.” The supreme court then further held that “when an applicant elects to purchase only the minimum bodily injury limits allowable, the option of selecting UM coverage at limits lower that [sic] those in the policy is foreclosed by law pursuant to La.R.S. 22:1406 D(1)(a)(I) and La.R.S. 32:900(B)(2).” Id. (footnote omitted).
In the present case Savant purchased bodily injury coverage in the minimum available limits: $10,000 each person/ $20,000 per occurrence. Therefore, Safeway was not required to offer or explain the absence of a lower limit. However, Safeway was still required to inform Savant of the two remaining available options: UM coverage equal to bodily injury limits in the policy or no UM coverage.
In support of its position that the UM rejection language in its policy is sufficient, Safeway cites Isaac v. Patterson Insurance Company, 97-608 (La.App. 3 Cir. 10/8/97); 702 So.2d 918, writ denied, 97-2806 (La.1/30/98); 709 So.2d 709. This court held that identical language met the requirements of La.R.S. 22:1406(D)(1)(a) to constitute a valid rejection of UM coverage.
However, we have to disagree with the panel which wrote that case. The language in the policy clearly indicates the choice of no UM |7coverage at all. However, the language does not inform Savant in any manner whatsoever that UM coverage equal to bodily injury limits in the policy was available. We agree with Judges Woodard and Peters in a published opinion on a writ application to this court, Dugas v. Benoit, 95-1653 (La.App. 3 Cir. 5/31/96); 677 So.2d 530. Judges Woodard and Peters dissented in part finding that identical language was legally deficient in its failure to apprise the insured of her statutorily granted rights. We note that the writ was remanded by the supreme court to this court for reconsideration in light of Daigle. Dugas v. Benoit, 96-1735 (La.5/30/97); 694 So.2d 224. However, the subsequent ruling by this court was not published.
We also note that identical language was involved in Williams v. National Car Rental System, 96-442 (La.App. 5 Cir. 1/28/97); 688 So.2d 144. The fifth circuit found that it was invalid because it only allowed the insured to reject UM *26 coverage. Likewise in Washington v. Imperial Fire & Cas. Ins., 28,434 (La.App. 2 Cir. 6/26/96); 677 So.2d 599, very similar language was used in the UM coverage section of the policy. The second circuit found that this language did not suggest that the insured would have the protection of UM coverage at the minimum liability coverage amounts if she did not reject the UM coverage.
The expression of a desire not to have UM coverage, however clear, does not constitute a valid rejection if the written rejection form does not meet the formal requirements of the law. Wilkinson v. Louisiana Indemnity, 96-0447 (La.App. 1 Cir. 11/8/96); 682 So.2d 1296, writ denied, 96-2920 (La.6/13/97); 695 So.2d 964.
Safeway’s rejection form signed by Savant does not meet the formal requirements of the law since it failed to inform him that he would have UM coverage at the minimum limits if he did not reject UM coverage. Therefore, because it was not a valid rejection, the policy is deemed to provide UM coverage at the minimum required limits.
Id. 98-542, 725 So.2d 43 .
In the instant case, as in Savant, Mr. Hope purchased bodily injury coverage in the minimum available limits. Thus, Safeway was not required to offer a lower limit of UM coverage. However, Safeway was required to inform Mr. Hope of the two remaining available options: (1) UM coverage equal to the bodily injury limits, or (2) no UM coverage. Accordingly, as in Savant, Safeway’s UM rejection form fails to meet the statutory and jurisprudential requirements since it failed to inform | RMr. Hope that he would have UM coverage at the minimum limits if he chose not to reject UM coverage.
However, unlike Savant, the present matter has a second UM rejection form. The form, provided by The Auto Insurance Center, provides in pertinent part:
REJECTION OF UNINSURED MOTORISTS PROTECTION
Louisiana law requires that all automobile liability policies issued or delivered in this state shall afford UNINSURED MOTORIST COVERAGE unless the insured rejects such coverage.
□I hereby REJECT Uninsured Motorists Bodily Injury coverage.
□I hereby REJECT Uninsured Motorists Property Damage coverage.
I have read the UNINSURED MOTORISTS REJECTION on the application and above. I understand this coverage and wish to REJECT UNINSURED MOTORISTS coverage available to me for this policy and any subsequent renewals, rewrites and for any vehicles that may be added. I understand that this coverage can be added during the policy term if I so desire. However the coverage would not become effective unless and until I pay the additional premium due, request this change in writing at the office of my agent and such coverage change is accepted by the company.
Signature_
The language used in The Auto Insurance Center’s form is almost identical to the language considered valid by the supreme court in Daigle, 691 So.2d 1213. Just as in Daigle, the form used by The Auto Insurance Center informed Mr. Hope in clear and unambiguous language that Louisiana law requires all automobile liability insurance policies issued to afford UM coverage “unless the insured shall reject such coverage.” Thus, Mr. Hope was advised that if he did nothing, he would have UM coverage. The form required that Mr. Hope exercise his option by marking the boxes to indicate that he did indeed choose to reject UM coverage. The form further required Mr. Hope’s signature as an affirmative act of the rejection of UM coverage. Accordingly, we find the UM rejection form valid on its face.
*27 1 nWhile the form in the record appears to have been signed by Mr. Hope, he declared in an affidavit that the form was never presented to him for his signature. Mr. Hudspeth, in his affidavit, stated that Mr. Hope did sign the second UM rejection form in connection with his application for insurance on August 12, 1994. Mr. Hope also refers to the fact that the second rejection form is undated. While courts have upheld UM rejection forms that did not provide the date, these forms were incorporated in the insurance application form and the date appeared elsewhere on the form. See Daigle, 691 So.2d 1213; Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3 Cir.1989), writ denied, 559 So.2d 138 (La.1990). The form in question in this case was a separate form that was not incorporated into the insurance application. Thus, there is no way of knowing exactly when the form was executed. Furthermore, Mr. Hope alleges in his affidavit that he never signed this particular UM rejection form, which casts doubt on the authenticity of the form.
Accordingly, we find that there is a material issue of genuine fact that precludes the granting of summary judgment. The matter will be remanded to the trial court to determine if the UM rejection form supplied by The Auto Insurance Center is authentic, thereby precluding coverage, or fraudulent, thereby mandating coverage.
DISPOSITION
The judgment of the trial court granting summary judgment in favor of Safeway Insurance Company is hereby reversed. The matter is remanded to the trial court for further proceedings consistent with the opinions expressed herein. All costs of this appeal are assessed to the defendant, Safeway Insurance Company.
REVERSED AND REMANDED.