788 So.2d 56 (2001)
Carlo J. SPERA, Jr., et ux
v.
LYNDON PROPERTY INSURANCE COMPANY, et al.
No. 00-1373-CA.
Court of Appeal of Louisiana, Third Circuit.
March 7, 2001.
Writ Denied June 1, 2001.
*57 Larry Feldman Jr., Wiener, Weiss, Madison, Howell, Shreveport, LA, Counsel for Defendant/Appellee United Business Associates Self Insurers Fund.
Larry Alan Stewart, Stafford, Stewart & Potter, Alexandria, LA, Counsel for Defendant/Appellee Audubon Indemnity Company.
Joseph Payne Williams, Williams & Williams, Natchitoches, LA, Counsel for Plaintiff/Appellant Carlo J. Spera, Jr., Sharon Spera.
*58 Wade Allen Johnson, Donelon, Johnson & McMahon, Metaire, LA, Counsel for Defendant/Appellee Lyndon Property Insurance Company, Tameka R. Below.
Court composed of YELVERTON, WOODARD, and PICKETT.
WOODARD, Judge.
Following an accident in which Ms. Tameka Below's vehicle collided with another operated by Mr. Carlo Spera, Mr. Spera filled suit against Audubon Indemnity Company (Audubon), his employer's uninsured motorist (UM) carrier. He filed a motion for summary judgment, seeking to reform the policy to provide UM limits equal to the bodily injury liability of $1,000,000.00, rather than the $30,000.00 limits which his employer's representative, Ms. Lois Caffey, selected. The trial court so held. Audubon appeals, alleging that the trial court's decision is erroneous for holding that the UM form had not been completely filled out, that a new UM form had to be filled out when the policy was modified broadening coverage, and that La.R.S. 22:1406(D)'s 1999 amendments were substantive changes in the law, hence, could not be retroactively applied to find it unnecessary to fill out a new UM form when the policy changes occurred. We affirm.

* * * * * *
On December 1, 1998, a vehicle, which Ms. Below operated, collided with a vehicle which Mr. Spera was driving. Morrison Environmental Services, Inc., d/b/a Adams Pest Control, employed him at this time. He filed suit against Audubon, alleging that it provided an automobile insurance policy which included uninsured motorist benefits. The Audubon policy was a commercial lines policy, providing insurance for Morrison's fleet of vehicles, with effective dates of March 26, 1998 through March 26, 1999.
Ms. Lois Caffey, Morrison's authorized representative as Secretary/Treasurer, elected to purchase UM coverage below the policy's liability limits. Thus, ultimately, Audubon issued an insurance policy to Morrison with liability limits of $1,000,000.00 and UM limits of $30,000.00. Following the accident, it tendered its UM limits to Mr. Spera. However, he contends that Ms. Caffey's initial lower UM limits selection was invalid.
He filed a motion for summary judgment, asking the trial court to declare Ms. Caffey's UM limits selection to be invalid and seeking to reform the policy to provide UM limits equal to the bodily injury liability limits of $1,000,000.00. The trial court held a hearing on the motion and took the matter under advisement. On May 22, 2000, it issued reasons for its judgment, holding that (1) the selection form for UM coverage was invalid because the insurer had not properly completed it after the insured signed; (2) certain changes had been made to the fleet policy after the UM selection; and (3) a 1999 amendment to La.R.S. 22:1406(D) should be applied retroactively, therefore, negating the need for a new UM selection. The court signed the judgment on June 2, 2000, and amended it, on July 7, 2000, to reflect that it was a final judgment. Audubon appeals.

* * * * * *
Appellate courts review summary judgments de novo under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate.[1] Summary judgment is *59 proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2]
La.Code Civ.P. art. 966 charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake.[3] Once the mover makes a prima facie showing that there is no genuine issue as to a material fact and that summary judgment should be granted, the burden shifts to the nonmover.[4] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains.[5] After which, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6] Thus, summary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts.[7]
Facts are material if they determine the outcome of the legal dispute.[8] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[9] As the material facts are not in dispute, we will address the relevant legal issues.

COMPLETION OF THE UM REJECTION FORM
The trial court held that Morrison's agent's rejection of UM coverage was invalid because the rejection form was incomplete. The court believed that, unless every blank on the form had been filled out, the form was not properly completed and that there was not a valid rejection of UM coverage.
Although the form complied with the requirements of the law by giving the insured three options: rejection; selection of lower limits, which she selected; and the selection of policy limits equal to the policy limits of $1,000,000.00, it was not completed. Ms. Lois Caffey, the secretary/treasurer of Morrison's, had written "$30,000.00" as the amount of coverage selected and she had signed her, then maiden, name, Ms. Lois Stevens, in the appropriate places. However, the effective date, the name of the insurance company, and the policy number were left blank.
*60 Notwithstanding, Audubon contends that the only statutory requirements for a properly completed UM rejection form were that it inform the insured of the three options and that the insured or the insured's legal representative properly sign it.[10] Morrison's legal representative signed the form in the instant case, which meets one of the statutory requirements of La.R.S. 22:1406(D)(1)(a)(ii). However, in order for Audubon to be entitled to the rebuttable statutory presumption of a valid selection of lower UM limits, the form, also, must be "properly completed."[11] As we are bound to apply the statute as written, unless it results in an absurd conclusion, we interpret "properly completed" to mean that every relevant blank on the form must be addressed, despite rulings to the contrary in other circuits.[12]
Accordingly, we hold that there is no error in the trial court's decision on this issue.

THE 1999 AMENDMENTS TO LA.R.S. 22:1406(D).
The current version of La.R.S. 22:1406(D) states:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
. . . .
(ii) After September 1, 1987, such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Subsection, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer. Any form executed prior to September 6, 1998 shall be valid only until the policy renewal date; thereafter, the rejection, selection *61 of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection.
(Emphasis added.)
The question is whether this provision emphasized above is subject to retroactive application. "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."[13]
Prior to the 1999 amendment, the jurisprudence concerning what changes to an insurance policy required an execution of a new UM form was confusing. For example, some cases held that the addition of a named insured to the policy did not constitute a new policy,[14] while other cases held that the addition of a named insured did require a new UM rejection.[15] Some courts held that an increase in liability limits did not warrant a new rejection,[16] while other cases went the opposite way.[17] Audubon urges that in resolving this confusion with the 1999 amendment, the legislature merely clarified the meaning to be given the statute. Thus, the statute is "interpretative" and entitled to retroactive application in this case. We disagree.
The trial court found that it is "substantive." A "substantive" law creates, confers, defines, destroys, or, otherwise, regulates rights, liabilities, causes of action or legal duties.[18] It establishes new rules, rights, and duties or changes existing ones.[19] The 1999 amendment "established" a new rule; namely, that, now, changes to an insurance policy, other than changes to limits of liability, would not require completion of a new UM form, which had not been the case prior to the amendment.
Thus, the amendment is a substantive change and may be applied prospectively only.[20] Accordingly, this "new rule" has no application to this case.

POLICY MODIFICATIONS
The trial court held that certain changes to the insurance policy required executing a new UM form, relying upon a 1998 case from this circuit that we decided en banc, Savant v. American Central Ins. Co.[21] In Savant, the named insured added its clients to a business automobile insurance policy as the insured brought its trucks to their businesses to deliver or repair the equipment. These businesses required that they be named as additional insureds under the policy. This court held that this created a "new policy" by increasing coverage. Therefore, a new form for rejecting UM coverage was necessary.
The changes made to the Audubon policy after the selection of UM limits were as follows: (1) March 26,1998 the policy became effective; (2) June 17, 1998, a 1993 pickup truck was deleted, and the premium *62 was reduced by $493.50; (3) June 23, 1998, a 1996 GMC pickup was added, and the premium is increased by $517.65; (4) September 1, 1998, effective retroactively to March 26, 1998, Drive Other Car Coverage is extended to E.I. Morrison and Tamara Morrison; (5) November 7, 1998, a 1998 pickup truck is added and the premium is increased by $306.60; (6) November 7, 1998, an additional insured-lessor endorsement is added for Edward Blake Morrison; (7) November 7, 1998, Drive Other Car Coverage is extended to Edward Blake Morrison. The accident occurred on December 1, 1998.
One of these changes "broadened" the policy's coverage, specifically item (7) above. Therefore, under Savant, this change was significant enough to create a "new policy" by increasing coverage and, thus, requiring a new UM selection form. We find no error in the trial court's reliance on Savant in this case and affirm its decision that Audubon's policy is deemed to provide UM coverage equal to the limit of bodily injury or $1,000,000.00.

CONCLUSION
Because of the coverage broadening change to the insurance policy, we affirm the trial court's holding that a new UM selection had to be made and cast Audubon with all costs.
AFFIRMED.
PICKETT, J., dissents.
NOTES
[1] Schroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.
[2] La.Code Civ.P. art. 966(B).
[3] Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
[4] Id.
[5] Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.
[6] Id.
[7] Id.
[8] Soileau, 702 So.2d 818.
[9] Id.
[10] La.R.S. 22:1406(D)(1)(a)(ii).
[11] Id.
[12] See generally, Melton v. Miley, 98-1437 (La.App. 1 Cir. 9/24/99); 754 So.2d 1088; Maney v. Bennett, 97-840 (La.App. 4 Cir. 11/ 19/97); 703 So.2d 152.
[13] La.Civ.Code art. 6.
[14] Daigle v. Allstate Ins. Co., 96-1352 (La. App. 4 Cir. 3/5/97); 690 So.2d 261.
[15] Dempsey v. Automotive Cos. Ins., 95-2108 (La.App. 1 Cir. 6/28/96); 680 So.2d 675.
[16] Moore v. Young, 490 So.2d 519 (La.App. 4 Cir.1986).
[17] Guilbeau v. Shelter Mutual Ins. Co., 549 So.2d 1250 (La.App. 3 Cir.1989).
[18] Genusa v. Dominique, 97-47 (La.App. 1 Cir. 2/20/98); 708 So.2d 784.
[19] Id.
[20] La.Civ.Code art. 6.
[21] 98-542 (La.App. 3 Cir. 12/9/98); 725 So.2d 43.