772 So.2d 346 (2000)
Frankie P. SINGLETON, Curator for Rhea Polk
v.
AAA HOME HEALTH, INC.
No. 00-00670.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
*347 Lucretia Pecantte-Burton, Hester, Pecantte-Burton & Waters, Jeanerette, Louisiana, Counsel for Plaintiff-Appellee.
James R. Shelton, Lafayette, LA, Counsel for Defendant-Appellant.
(Court composed of HENRY L. YELVERTON, ULYSSES G. THIBODEAUX, SYLVIA R. COOKS, Judges).
COOKS, Judge.
AAA Home Health, Inc. appeals a Judgment Notwithstanding the Verdict granted in favor of Frankie P. Singleton, curator for Rhea Polk. AAA contends the trial court applied the wrong standard of review in considering plaintiff's motion for JNOV, and in the alternative, contends the trial court's award of damages is excessive.

*348 FACTS AND PROCEDURAL BACKGROUND

In October 1994, Rhea Polk's treating physician, Dr. George Sagrera, recommend she receive home health services following her hospitalization for renal disorders and congestive heart failure. Rhea Polk employed AAA Home Health, Inc. (hereinafter "AAA") to provide skilled nursing care for Polk's renal, cardiac, mental, and hypertensive status. In March 1995, Dr. Sagrera discovered Polk had developed four decubitus ulcers (bedsores), and he ordered AAA's nurses to begin treating her regularly by cleaning these wounds, as well as, any other skin breaks. On May 19, 1995, Dr. Sagrera also ordered AAA's skilled nurses to begin packing the right hip wound with Betadine gauze. On this date the record indicates the right hip wound was approximately 5½ centimeters in diameter and 7½ centimeters deep.
AAA's skilled nurses packed Polk's right hip wound five times a week until September 22, 1995, when the wound improved enough to discontinue packing it. AAA continued to clean and dress the wound regularly, but the right hip wound eventually worsened. Because the wound failed to heal by September 1996, Dr. Sagrera referred Ms. Polk to Dr. Michael Tarantino, who performed surgery on September 5, 1996. During this surgery, Dr. Tarantino discovered a piece of gauze imbedded in the ulcerated wound. The gauze was removed by Dr. Tarantino, and additional surgery was performed several months later since the wound still would not heal completely. Frankie P. Singleton, curator for Rhea Polk, brought this action against AAA alleging it negligently failed to remove gauze from Ms. Polk's right hip wound, resulting in its failure to heal. At trial, the primary evidentiary dispute centered on whether other individuals, specifically sitters employed to care for Ms. Polk performed the packing procedure and failed to remove the gauze. Although the sitters denied ever packing the wound, AAA argues that extensive testimonial and documentary evidence proves the sitters provided "wound care," and they had been taught to perform the packing procedure. The jury rendered a verdict in favor of AAA at the conclusion of trial.
The trial court granted Singleton's Motion for a Judgment Notwithstanding the Verdict and awarded $105, 711.80 in damages. The trial court reasoned Dr. Sagrera ordered AAA's skilled nurses to perform the packing procedure and their failure to adhere to the doctor's orders was clearly a breach of the standard of care owed to Ms. Polk. The trial court accepted that the sitters "dressed" the wound by replacing the top-layer of gauze, but found the evidence lacking in establishing that they performed the packing procedure. Because Dr. Sagrera ordered skilled nurses to pack the wound, the trial court held AAA's alleged instruction to the sitters also deviated from the doctor's orders and the standard of care owed to Ms. Polk. The trial court stated, "analyzing the evidence presented in light most favorable to the defendant, a finding that AAA Home Health Agency was not liable to the plaintiff by a preponderance of the evidence is contrary to the law and evidence presented in this case." AAA contends the trial court erred by evaluating the witnesses' credibility in reaching its decision to grant the JNOV.

LAW AND ARGUMENT
La.Code Civ.P. art. 1811 permits a judgment notwithstanding the verdict, but it does not specify the grounds on which a trial judge may grant it. The Louisiana Supreme Court reiterated the criteria we should consider in determining whether a JNOV is proper in Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991) (citation omitted):
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted *349 only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
As instructed on appeal, in assessing the propriety of the trial judge's decision to grant a JNOV, we must first inquire whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. If the answer is no, then it is error for the trial judge to grant the motion and the jury's verdict should be reinstated. Perkins v. Guaranty Nat. Ins. Co., 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559, writ denied, 96-759 (La.5/31/96); 673 So.2d 1033; Daigle v. U.S. Fidelity & Guar. Ins. Co., 94-304 (La.App. 1 Cir. 5/5/95); 655 So.2d 431. If the trial court correctly granted the JNOV, our review of the trial court's damage award is limited to determining whether they are manifestly erroneous. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Perkins, 667 So.2d 559.
Dr. Sagrera issued an order in March 1995, directing only skilled nurses to perform the packing procedure on Ms. Polk's wounds, five times a week. Rhea Polk employed AAA's skilled nurses to provide this care exclusively. Upon each visit, AAA's nurses were required to document in their notes the care provided to Ms. Polk. Plaintiff's expert, Christine Hall, testified documentation is an integral part of the medical service provided, since it's the only form of communication between the several nurses treating Ms. Polk. Christine Hall further testified that AAA breached its standard of care by not documenting the number of gauzes used to pack Ms. Polk's wound and by not documenting the number of gauzes removed each time the nurses re-packed the wound. The record indicates AAA did not begin this documentation until after this litigation was initiated.
AAA contends it produced significant evidence at trial to show Ms. Polk's sitters were taught to provide wound care and did in fact pack Ms. Polk's wound with gauze. Amy Breaux, a skilled nurse employed by AAA, testified that on June 23, 1995, she instructed Ms. Polk's sitters how to pack the wound. The sitters' signature appears on every skilled nurses' note except the one allegedly documenting the instruction. Carrier and Annie Deal, Ms. Polk's two sitters, denied ever being taught the procedure by AAA's nurses and testified they only replaced the outer layer of bandages when necessary. The sitters also testified they assisted the nurses by getting the supplies needed when the nurses arrived. Elizabeth Lambeth, defense's expert, acknowledged that if one of the employees of AAA was the person who left the gauze in the wound, then it would certainly be a breach of the standard of care. AAA does not dispute this position, but only argues it cannot be determined from the record who left the gauze in the wound.
None of AAA's nurses observed the sitters perform this procedure. The record also does not contain any documentary evidence which supports AAA's contention that the sitters packed the wound. AAA argues the trial court granted the JNOV solely based on its view of the sitters' credibility. AAA also argues it was not unreasonable for the jurors to infer from Amy Breaux's testimony that the sitters actually preformed this procedure and failed to remove the gauze. Again, neither firsthand knowledge nor any documentation factually supports the inference AAA *350 urges us to draw and rely on as an evidentiary basis for the jury's verdict.
In the final analysis, whether Amy Breaux instructed the nurses how to pack the wound is not germane to the ultimate issue raised. Defense's own expert, Elizabeth Lambert, testified skilled nurses do not have the option to change the care ordered by the treating physician. Amy Breaux's decision to instruct the sitters how to pack the wound was contrary to Dr. Sagrera's order and breached the standard of care she owed Ms. Polk.
Even so, the defense argues Ms. Polk suffers from dementia and, on two separate occasions during the relevant period, AAA's nurses aid documented that she took the gauze off the wound and placed her hand inside it. AAA contends on these two occasions Rhea Polk could have placed the gauze into the wound herself. Rhea Polk did not discharge AAA of the duty it owed her by twice placing her hand in the wound. Even if Rhea Polk placed the gauze there herself on either occasion, AAA's failure to properly inspect, clean or treat the wound after its mentally incapacitated patient played with it also fell below the standard of care.
We cannot say the trial judge erred in concluding reasonable minds could not arrive at a contrary verdict. Like the trial court, we are satisfied the facts and inferences point so strongly and overwhelmingly in favor of a finding that AAA breached the standard of care it owed Ms. Polk that reasonable men could not find otherwise.
We turn to address whether the trial court committed manifest error in awarding damages. Anderson, 583 So.2d 829. Several of Ms. Polk's family members testified she endured a great deal of pain associated with the bedsore on her right hip for over a year. It was not uncommon for Rhea Polk to scream in agony or pray aloud as a result of the pain she experienced. Based on the compelling testimony proving Rhea Polk endured severe pain, we cannot say the trial court's damage award was manifestly erroneous.

DECREE
For the foregoing reasons, the trial court's granting of a Judgment Notwithstanding the Verdict in favor of the plaintiff, Frankie Singleton as curator for Rhea Polk, is affirmed. Costs of this appeal are assessed against defendant-appellant.
AFFIRMED.